SOUTH BALTIMORE COMPANY *v.* WASHINGTON, BALTIMORE AND ANNAPOLIS ELECTRIC RAILROAD COMPANY.

MAYOR AND CITY COUNCIL OF BALTIMORE *v.* WASHINGTON, BALTIMORE AND ANNAPOLIS ELECTRIC RAILROAD COMPANY.

*Bridges Across Railroad Track—Contract for Erection—Interpretation—Change In Use.*

Where the owner of a tract of land, after laying out streets thereon, conveyed to a railroad company parts of said tract between certain streets, and also the "right and liberty" of erecting railway bridges over two of such streets and of making a railway cut in the bed of another of such streets, the railroad company agreeing to erect and maintain over such cut a bridge of the breadth of the street, *held* that, the beds of the streets not being included in the conveyance, the grantor was free to enlarge the uses of the street on which the bridge was erected, and could dedicate the way over the bridge to the general public.

pp. 682, 683

A statement, in connection with the agreement by the railroad company to erect and maintain a bridge over the cut, "in as much as" the cut through the bed of the street "will require a substantial bridge over the same suitable for wagons, cattle and horses and foot passengers," *held* not to restrict the bridge to those specific uses in the future, this merely describing the present uses to be taken care of.                    p. 683

On an issue as to the right of a railroad company to object to the laying of water mains on a bridge erected by it under an agreement with the owner of the bed of a street crossing the railroad, *held* that the question of the ownership of the bridge was immaterial, the rights of ownership therein being entirely subservient, under the agreement, to the rights in the street which it supported.                          p. 683

A railroad company which does not own the bed of a street which crosses the railroad cannot object to the laying of water mains in the street. p. 683

A contract by a railroad company to erect over its railroad, on the line of a street, a substantial bridge, and to maintain it at all times thereafter, did not require the company to provide support of an unlimited kind or degree, to keep pace with increases in the burden of street uses. p. 684

The railroad company, having erected the bridge as agreed, was entitled, in case of any use thereof beyond or differing from those for which the bridge was adapted, tending to increase the burden of maintenance, or endangering the railroad and its traffic, to have the unsuitable use enjoined, or, as an alternative, to require its bridge to be replaced by a safer one, at the cost, and upon the responsibility, of other parties concerned. p. 684

*Decided January 21st, 1926.*

Appeals from the Circuit Court of Baltimore City (Sol-TER, J.).

Bill by the Washington, Baltimore and Annapolis Railroad Company against the Mayor and City Council of Baltimore, to which, upon its petition, the South Baltimore Company was made a party defendant. From an order overruling demurrers to the bill, the defendants separately appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Eben J. D. Cross, Jr., Assistant City Solicitor,* with whom was *Philip B. Perlman, City Solicitor,* on the brief, for the Mayor and City Council of Baltimore, appellant.

*Richard S. Culbreth,* for the South Baltimore Company, appellant.

*Frank Gosnell,* with whom were *George Weems Williams* and *Marbury, Gosnell & Williams* on the brief, for the Washington, Baltimore and Annapolis Electric Railroad Company, appellee.

BOND, C. J., delivered the opinion of the Court.

These appeals are from an order overruling demurrers to the railroad company's bill for an injunction against the laying of water mains over a bridge which crosses the railroad. The facts averred in the bill were, substantially, these:

In 1906 the railroad company, then under the name of The Baltimore Terminal Company, acquired, for a. section of its road bed, a strip through a tract south of Baltimore City, and in Baltimore County, owned by the South Baltimore Company. The tract was a large, undeveloped area in the country, but streets had been platted and were to some extent in use. Three of the streets, named Manokin, Kent and First Streets, were to be crossed by the railroad. The deed of conveyance described and conveyed to the railroad company the fee in two lots or sections lying between the cross streets, and all the right, title and interest of the grantor in another lot or section beyond First Street, the "liberty and right to erect at its own expense a railway bridge" over Manokin Street, and one over Kent Street.

> "And also the right and liberty to make at its own expense a railway cut not exceeding eighty-four feet in width in the bed of First Street * * * in order to unite the said parcel of land secondly herein described with the parcel of land thirdly herein described and to erect a bridge above the same, but subject to the conditions hereinafter mentioned with respect thereto, said several railway bridges and cut designed and intended to connect said several tracts of land for the accommodation of the projected railway of the said Baltimore Terminal Company or its assigns and for no other purpose."

Then, after taking up in turn the construction work required for each of the other two crossings, the deed contained this covenant in regard to the cut and bridge at First Street:

> "Inasmuch as the proposed railway cut through the present bed of First Street will require a substantial bridge over the same suitable for wagons, cattle, and horses and foot passengers, the said Baltimore Termi-

nal Company shall forthwith at its own expense erect
and construct under the supervision of Henry Adams,
engineer of works of the South Baltimore Company
and at all times hereafter at its own expense main-
tain in good order a substantial bridge of the full width
of said First Street over the said cut of the height,
design and breadth as shown by the plan or draught
of said bridge also hereto annexed and marked with the
letter "C."

There was a clause expressly disclaiming any intention to
dedicate streets mentioned in the deed or on the plats referred
to, and a declaration that they were mentioned "simply for
convenience in describing the said several parcels of land
hereby conveyed * * * and the several rights and liberties
secured to and obligations incurred by the parties hereto
respectively."

The bridge was built by the railroad company as agreed,
and has since been maintained as built. Drawings exhibited
show that the four outer abutments, or bases, extend for half
their thickness over the line of First Street and on the lots
on each side, which the railroad company acquired in fee
simple.

In 1922, after the annexation of this district to Baltimore
City, the Mayor and City Council of Baltimore bought from
the South Baltimore Company a portion of its land border-
ing on First Street for a school house. And the deed of
that lot also contained a disclaimer of any dedication of the
streets mentioned, and added to it a reservation of all the
South Baltimore Company's right, title and interest in the
beds of the streets, excepting only the right of user as streets
in common by the city, its successors and assigns, and others
entitled so to use the same. First Street, from a point on one
side of the bridge to a point on the other, was designated as
a street over which a right of user was so granted.

On building its school house, the city concluded to supply
it with water by a six-inch water main run along First Street
and over the bridge. It first attached the main to the under
side of the bridge by iron braces, but after an accident to a

city workman from contact with the trolley wires, relaid the main over the bridge. This action by the city was without the authority or consent of the railroad. It is alleged that a bursting of the main, at one time after its location across the top of the bridge, damaged the railroad embankment, and put the company to the expense of restoring it.

To aid in construing the agreement of the South Baltimore Company and the railroad company, it is averred that in 1906 the travel at the crossing was slight, with few vehicles any day, and on some days none, that the bridge when built was scarcely used by wagons, cattle, horse, and foot passengers, and that, during the sixteen years from 1906 to 1922, the floor of the bridge needed renewal only once, and that not because of wear, but because of rotting of the timbers. Now, since the erection of the school house, the traffic has increased enormously, and heavily loaded automobile trucks carry material over the bridge to the school house site, and hundreds of workmen pass over it every working day, almost hourly.

The railroad company denies the existence of any right in the city to lay the main across the bridge, and complains that the main amounts to an illegal obstruction and nuisance. And it asks an injunction against further use of the bridge for this purpose, and to require a restoration of the former condition.

We agree with the lower court that the stipulations regarding the crossing show a purpose to leave the streets unaffected by the conveyance of the roadway or right of way to the railroad company. The beds of the streets intersected by the railroad are carefully excepted from the grant of land in fee simple, the railroad company being given merely a "right and liberty" to cross above or below grade, in order to make connections, and for no other purpose. This being true, there would seem to be no restriction placed upon the development of First Street across the bridge, that is to say, apart from any question as to the burden and capacity of this bridge, the South Baltimore Company was left entirely free to enlarge the uses of First Street in the future as it·

might wish. And, in our opinion, it did not, by its agreement with the railroad company, deny itself freedom to dedicate the way over the bridge to the general public. We construe the agreement to have been, not that the railroad company should carry across its right of way a limited use and burden, but rather that its right of way should not interfere with the street and its appropriate uses, whatever they might be at any time, and that, as a necessary incident to the cut it had to make at that crossing, it must provide support for the street overhead, still deferring all question as to capacity of the specific bridge agreed on for the purpose at that time. We agree with the trial judge, that the introductory statement: "Inasmuch as the proposed railway cut through the present bed of First Street will require a substantial bridge over the same suitable for wagons, cattle and horses and foot passengers," is to be viewed, not as restricting the bridge to those specific uses in the future, but as merely describing the present uses to be taken care of, without any implication as to possible changes in the uses in future. In this view, the question of ownership of the bridge, which was discussed in argument, appears to us to be without importance in the case, for the bridge is a mere instrument, after all, and rights of ownership in it are entirely subservient, under the agreement, to the rights in the street which it supports. We are, further, of opinion that the question whether the street has been dedicated to general public use, so that the city might have a right to lay water mains under it (*Baltimore County Water Co. v. Dubreuil,* 105 Md. 424, 427), is one which does not arise in a suit by the railroad company. As the railroad company does not own the fee in the bed of the street, it could advance no objection to infringement upon the fee simple rights. *North Penna. Railroad Co. v. Traction Co.,* 205 Pa. 579; 18 *A. L. R.* 619, note. The South Baltimore Company, which does own the fee, not only does not advance such an objection, but is here opposing one.

So much concerns objections on the theory of infringement of rights of ownership, apart from any question as to the ca-

pacity of this particular bridge, or as to the limits of the railroad company's undertaking to support street uses as they might grow. The contract obviously did not require that the railroad company should provide support of an unlimited kind or degree, to keep pace with increases in the burden of street uses. It provided, on the contrary, only for the particular bridge then designed and built; and that bridge the railroad company was to maintain "at all times hereafter." That bridge, with the burden for which it was adapted, was the limit of the railroad company's obligation. And any use beyond or differing from those for which it is adapted might be a wrong to the railroad company, either because of its tendency to increase the burden of maintenance and the responsibility under the agreement, or because of the danger which might result to the railroad and its traffic. And it might have the unsuitable use enjoined, or, as an alternative, require that its bridge be replaced by a safer one, at the cost, and upon the responsibility, of other parties concerned. The bill contains allegations of great increase of burden on the bridge, and of damage from the bursting of the water main in one instance. But there is no direct averment that the increased use has reached a point where the safety of the railroad or its traffic is endangered. The bill seems rather to have been drawn upon the theory of infringement upon rights of ownership in the bridge by the enlargement of the use beyond that contemplated in the agreement. That theory, we find, is not well founded.

It follows that the relief prayed for should, on the facts so far averred, have been denied, and the demurrers sustained. But in order that the railroad company may not be precluded from presenting to the court any contention now or hereafter that the uses of the bridge it is maintaining exceed the limit of reasonable safety, if it believes this to be a fact, the order will be reversed without prejudice to any bill it may file upon that theory.

> *Order reversed, and bill dismissed without*
> *prejudice, in accordance with this opinion,*
> *appellee to pay costs.*