Hart, J.
 

 The plaintiff brought this action for wrongful death on behalf of herself and her minor child against both the village of Napoleon and the railroad company, charging that both maintained the street in question in a dangerous condition, amounting to a nuisance, of which both had ample notice. The
 
 *348
 
 village took the position that the fault was wholly that of the railroad company in constructing and maintaining its railroad bridge, without authority from the village, in such manner as to create a dangerous situation. The railroad company claimed that the construction of its bridge over the street was adequate and sufficient when built; and that it was not bound to change the structure to meet the demands of new uses of the street, this being a responsibility of the village since the council alone had control of the street. Both defendants charged that plaintiff’s decedent was guilty of contributory negligence in not taking precaution for his own safety, thereby causing his own death. The specific questions involved in this case are: (1) May a municipality be made liable in damages for the acts of another who, in erecting a structure upon or over a street in such municipality, creates a nuisance or a dangerous situation resulting in injury to one lawfully using such street, granting that the municipality had requisite notice of the existence of such nuisance or dangerous situation? (2) If a railroad bridge or trestle, when built over a public street by a railroad company, is suitable and sufficient in vertical clearance for the then type and amount of traffic on the street, is it the duty of such railroad company to increase such vertical clearance so as to accommodate a subsequent change in type and amount of traffic on the street under the bridge; and if such railroad company fails' to make such change in vertical clearance under such circumstances, does it become liable in damages to one lawfully using such street who is injured by coming in contact with such bridge or trestle because of insufficient vertical clearance? (3) Is a person who is injured by coming in contact with an overhead railroad bridge or trestle with insufficient vertical clearance, while riding on top of a truck operated by another over a public street underneath such bridge, guilty of negligence or contributory
 
 *349
 
 negligence as a matter of law, when, if he had looked at any point on the street within three hundred feet of the bridge, he could have seen plainly the position of such bridge or trestle and the vertical clearance between it and the street? These problems will be discussed in order.
 

 A municipal corporation holds the fee in its streets in trust for the purpose of public travel and transportation, subject to the right of the state to direct the method and manner by which such trust shall be administered, and is charged at all times by reason of Section 3714, General Code, with the inescapable duty to keep such streets open, in repair and free from nuisance. This duty and requirement extends to the space above as well as to the surface of the street. “The public right goes to the full width of the street and extends indefinitely upward and downward so far at least as to prohibit encroachment upon such limits by any person by any means by which the enjoyment of such public right is or may be in any manner hindered or obstructed or made inconvenient or dangerous.” 44 Corpus Juris, 1007, note. This applies where a wire is stretched above and across a street
 
 (Wheeler
 
 v.
 
 City of Fort Dodge,
 
 131 Ia., 566, 108 N. W., 1057, 9 L. R. A. [N. S.], 146); or a bridge or covered viaduct erected 'between upper stories of buildings on opposite sides of the street
 
 (Bybee
 
 v.
 
 State,
 
 94 Ind., 433, 48 Am. Rep., 175), or a rope stretched across a street by which a person is injured
 
 (French
 
 v.
 
 Inhabitants of Brunswick,
 
 21 Me., 29, 38 Am. Dec., 250). “There is no sound reason why the duty of a municipal corporation to keep its streets ‘in safe condition’ should not require it to take reasonable precaution's against dangers from overhead as well as under foot.”
 
 Bohen
 
 v.
 
 City of Waseca,
 
 32 Minn., 176, 19 N. W., 730, 50 Am. Rep., 564. See also
 
 Hume
 
 v.
 
 Mayor,
 
 74 N. Y., 264.
 

 Of course, the municipality is not an insurer of the safety of persons using its streets, but it must see that
 
 *350
 
 such streets are kept in reasonably safe condition for travel in the usual mode.
 
 City of Dayton
 
 v.
 
 Glaser,
 
 76 Ohio St., 471, 81 N. E., 991, 12 L. R. A. (N. S.), 916;
 
 Village of Mt. Pleasant
 
 v.
 
 McCullough,
 
 79 Ohio St., 439, 87 N. E., 1142. This is a responsibility from which the municipality cannot relieve itself by any attempt to place the performance of such duty upon another. For instance, the fact that a railroad company, by agreement with the city, erects structures within a street to carry its railroad over the street does not exempt the city from responsibility created thereby.
 
 City of Steubenville
 
 v.
 
 McGill,
 
 41 Ohio St., 235;
 
 Wabash Rd. Co.
 
 v.
 
 Defiance,
 
 52 Ohio St., 262, 307 and 310, 40 N. E., 89 (affirmed, 167 U. S., 88, 42 L. Ed., 87);
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 Stanley,
 
 232 Ala., 273, 167 So., 745.
 

 If the municipality fails in this duty, and its failure results in injury to one lawfully using such street, it becomes liable to him in an action at law for damages. If the municipality itself, through its responsible officers, creates or authorizes the creation of a nuisance or dangerous condition, it becomes at once liable to the injured party.
 
 Circleville
 
 v.
 
 Neuding,
 
 41 Ohio St., 465;
 
 Village of Cardington
 
 v.
 
 Admr. of Fredericks,
 
 46 Ohio St., 442, 21 N. E., 766;
 
 City of Dayton
 
 v.
 
 Pease,
 
 4 Ohio St., 80. And, even where the nuisance or dangerous condition in its street is created by another without its authority, a municipality is nevertheles's liable to one receiving an injury because of such nuisance, if the injury occurs after it acquires actual knowledge of the existence of such nuisance, or after sufficient time has elapsed that under the circumstances it should have acquired knowledge of the existence thereof.
 
 Bello
 
 v.
 
 City of Cleveland,
 
 106 Ohio St., 94, 99 and 100, 138 N. E., 526;
 
 City of Zanesville
 
 v.
 
 Fannan,
 
 53 Ohio St., 605, 42 N. E., 703, 53 Am. St. Rep., 664;
 
 City of Zanesville
 
 v.
 
 Spoerl,
 
 54 Ohio St., 634, 46 N. E., 1156;
 
 Cleveland
 
 v.
 
 King,
 
 132 U. S., 295, 33 L. Ed., 334, 10 S. Ct.,
 
 *351
 
 90;
 
 Wilhelm
 
 v.
 
 City of Defiance,
 
 58 Ohio St., 56, 50 N. E., 18, 65 Am. St. Rep., 745, 40 L. R. A., 294;
 
 City of Cleveland
 
 v.
 
 Amato,
 
 123 Ohio St., 575, 176 N. E., 227;
 
 City of Circleville
 
 v.
 
 Sohn,
 
 59 Ohio St., 285, 305, 52 N. E., 788, 69 Am. St. Rep., 777;
 
 Central Union Telephone Co.
 
 v.
 
 City of Conneaut,
 
 167 F., 274, 16 O. F. D., 259.
 

 Since the village of Napoleon had exclusive control . of its streets and could change the grade of the street so as to provide proper vertical clearance under the railroad bridge or trestle, or since by appropriate, action it could compel the railroad company to join in a readjustment crossing project so as to provide adequate clearance under its bridge, the village, granting it had due notice, rendered itself liable to those lawfully using the street who were injured because of such insufficient clearance. In this connection a very definite statutory duty is laid upon the municipality where there is a separation of grade between a railroad and the street. Section 8889, General Code, provides that “when the public way passes under the railroad, the bridge and its abutments shall be kept and maintained by the railroad company, and the public way and its approaches be maintained and kept in repair by the municipality in which they are situated.” This duty includes the resurfacing of a street, and of course the determination of grades.
 
 City of Bucyrus
 
 v.
 
 Pennsylvania Rd. Co.,
 
 127 Ohio St., 301, 188 N. E., 355.
 

 There is no question as to notice to the village of Napoleon that the amount of clearance provided between the street and the railroad bridge was inadequate and was a menace to the traveling public. The statute in this state, Section 7248-2, General Code, making it unlawful to operate a vehicle upon the highways, streets, bridges and culverts of the state of a greater height than twelve feet, six inches, was constructive notice to the village as well as the railroad company that trucks under such height had a lawful
 
 *352
 
 right to travel the highways and that this clearance did not accommodate a truck over ten feet, two inches in height. There is also evidence that the traveling public, from time to time in the last several years, experienced difficulty in negotiating this underpass and that accidents had occasionally occurred at this point to persons using the highway; and if any further notice is required,- it is to be found in the numerous complaints which the village council of Napoleon, in council sessions, had registered against the railroad for the maintenance of this underpass in its present condition, and the several written communications concerning -such action, by order of council, sent to the railroad company at various times since 1915.
 

 Under the circumstances the court is of the opinion that there is no error in the record as to the judgment in this case rendered against the village of Napoleon.
 

 The defendant railroad company complains of the judgment rendered jointly against it and the village of Napoleon, taking the position that since the clearance underneath its bridge or trestle, which spans the highway, was adequate for all traffic using the street when it was built in 1895, it cannot now be held at fault, or its bridge or trestle declared a nuisance-, because the character and modes of transportation have outgrown the passageway underneath the bridge; that this is a problem of the village authorities and not the railroad ; that there was no statutory regulation as to the amount of vertical clearance required when the bridge was built; that there has been no legislation on the subject since that time, and consequently it is not in any default; that the railroad company has no right or authority to change or alter the street grade or surface; that it is impracticable to raise the level of the tracks and the bridge because the present surface level is fixed in crossing other streets in the village and the Wabash railroad a short distance north of the bridge; and that the cost of such a project, if un
 
 *353
 
 dertaken, would be prohibitive and out of all proportion to the cost of depressing the street level under the bridge, a project for which the village of Napoleon is responsible.
 

 The defendant railroad company cites several cases in support of its contention, but in the opinion of the court they are not entirely controlling. Most of them go to the solution of controversies arising between the municipal authorities and railroads where the latter have constructed overhead bridges for the use of highways crossing the railroads, and the municipal authorities, at a later date, have sought to compel the railroads to reconstruct and strengthen these bridges so as to carry new modes of traffic or new municipal instrumentalities. They do not involve the rights of third persons who are injured by such bridges while in the lawful use of highways. The case of
 
 South Baltimore Co.
 
 v.
 
 Washington, Baltimore & Annapolis Elec. Rd. Co.,
 
 149 Md., 678, 132 A., 269, holds that a railroad is not obliged to rebuild an overhead highway bridge to carry a large city water main proposed to be constructed upon it. The case of
 
 People, ex rel. Western New York & Penna. Rd. Co.,
 
 v.
 
 Adams,
 
 95 N. Y. Sup. Ct., 122, 34 N. Y. Supp., 579, denies the right of the city of Rochester to require the railroad company to rebuild an overhead highway bridge so as to provide sufficient strength to support the passage of electric street cars weighing twenty-three tons. In the case of
 
 Atty. Genl., ex rel. Pickfords, Ltd.,
 
 v.
 
 Great Northern Ry. Co.
 
 (1916), 2 Appeal Cases, 365, the court held the railroad company was not obliged to rebuild a bridge, adequate for traffic when built, but not strong enough to carry motor busses proposed to be operated over it.
 

 The acquiescence of a municipality in the maintenance by a railroad company of an overhead railroad bridge over one of its streets does not take away from the municipality its complete right of control over such
 
 *354
 
 street; nor does it give the railroad company the right to perpetually maintain the bridge as originally constructed. The right of the railroad company in this respect is at all times subject to the right of the municipal authorities to improve the street, and change the grade thereof, as the public interest may require.
 
 Wabash Rd. Co.
 
 v.
 
 Defiance, supra;
 
 28 Ohio Jurisprudence, 554, 555, Section 348; 51 Corpus Juris, 672;
 
 City of Zanesville
 
 v.
 
 Fannan, supra.
 

 Section 8763, General Code, as amended May 9, 1908, specifically authorizes municipalities to grant to railroad companies, by specific agreement, the right to use public streets. If it becomes necessary for a railroad to cross any public street with elevated tracks including the necessary supports, the municipal authorities are, by this' section of the General Code, authorized to enter into an agreement with the railroad company specifying the manner, terms and conditions of the use and occupation of the streets by the railroad company. It is indicated by Section 8770, General Code, that such grants or agreements shall be evidenced by ordinance duly passed by the city council, and if there are to be piers or supports placed in the street or highway, it is required that the approval of two-thirds of the members of council and of the mayor shall be given. The construction and operation of a railroad with reference to streets must be confined strictly to the authority given and the limitations of the grant. Its construction or operation in excess of such limitations is not only a nuisance, but makes the railroad company a trespasser, liable, in the absence of contributory negligence on the part of the party injured, for such damages as proximately result to him or his property.
 
 Pittsburg, C. & St. L. Ry. Co.
 
 v.
 
 Hood
 
 (C. C. A., 6th. Dist.), 94 F., 618,13 O. F. D., 27.
 

 Prior to the amendment of Section 8763, General Code, municipalities had no power to grant to railroads the right to construct elevated tracks over city
 
 *355
 
 streets, or piers and abutments or supports therein. Before this amendment it was repeatedly held that local authorities could not enter into contracts with a railroad company for the exclusive or permanent occupation of a street or highway by abutments or supports for overhead bridges. Such obstructions were considered nuisances and both the railroad companies and the cities were made liable to suits for damages for injuries caused by such obstructions.
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 City of Cincinnati,
 
 76 Ohio St., 481, 81 N. E., 983;
 
 Lake Shore & Michigan So. Ry. Co.
 
 v.
 
 City of Elyria,
 
 69 Ohio St., 414, 69 N. E., 738;
 
 Wabash Rd. Co.
 
 v.
 
 Defiance, supra; Little Miami Rd. Co.
 
 v.
 
 Commrs. of Greene Co.,
 
 31 Ohio St., 338. But in no event can the municipal authorities abuse their power to authorize such elevated tracks and other structures by authorizing piers or supports which will interfere with the ordinary use of the streets.
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 City of Cincinnati,
 
 76 Ohio St., 481, 81 N. E., 983. This being the measure of the right of a railroad company and a municipality to contract with each other for the construction of railroads over and across streets of the municipality, how stands the defendant railroad company in the instant case ?
 

 The plaintiff claims, and nowhere in the record does the railroad company refute the claim, that it did not secure a franchise from the municipal authorities of the village of Napoleon to construct its railroad tracks in that village. The undisputed evidence is that the village records covering the period of time when the railroad company constructed its line - of railroad through the village, fail to show any ordinance or action of council giving any consent or authority to the railroad company to use its streets, and since any claim of this kind involves the surrender of a public right, none will be presumed.
 
 Wabash Rd. Co.
 
 v.
 
 Defiance, supra; Seaboard Air Line Ry. Co.
 
 v.
 
 City of
 
 
 *356
 

 Raleigh,
 
 219 F., 573 (affirmed, 242 U. S., 15, 61 L. Ed., 121, 37 S. Ct., 8);
 
 Birmingham Belt Rd. Co.
 
 v.
 
 City of Birmingham,
 
 211 Ala., 674, 101 So., 599. Neither could the railroad company secure any rights in the streets by adverse possession.
 

 “The erection of obstructions in a public street which materially interfere with public travel and are public*nuisanees cannot ripen into a right of use by the running of the statute of limitations, even though the statute may in some instances run against municipalities,” 34 Ohio Jurisprudence, 475, Section 607. See also
 
 Little Miami Rd. Co.
 
 v.
 
 Commrs. of Greene County, supra; Lake Shore & Michigan Southern Ry. Co.
 
 v.
 
 City of Elyria, supra; Lawrence Rd. Co.
 
 v.
 
 Commrs. of Mahoning County,
 
 35 Ohio St., 1. This being the situation, it is apparent that the railroad company had no right to interfere with the full use of the street at the point in question, and maintained its bridge or trestle at its peril.
 
 Cooke
 
 v.
 
 Boston & Lowell Rd. Corp.,
 
 133 Mass., 185.
 

 It is a general principle of law that one is liable for all damage resulting from his unlawful act without any reference to his intention or the exercise of care in the premises.
 
 Little Miami Rd. Co.
 
 v.
 
 Naylor,
 
 2 Ohio St., 235, 59 Am. Dec., 667. This doctrine is' not based on the ground that the act is negligent, but on the ground that the prosecution of the actor’s business is unauthorized by law and constitutes a nuisance. In the case of
 
 Congreve
 
 v.
 
 Smith,
 
 18 N. Y., 79, the Court of Appeals of New York said:
 

 ‘ ‘ The general doctrine is, that the public are entitled to the street or highway in the condition in which they placed it; and whoever, without special authority, materially obstructs it, or renders its use hazardous, by doing anything upon,
 
 above
 
 or below the surface, is guilty of a nuisance; and, as in all other oases of public nuisance, individuals sustaining special damage from it, without any want of due care to avoid injury, have
 
 *357
 
 a remedy by action against tbe author or person continuing the nuisance. No question of negligence can arise, the act being wrongful.” (Italics ours.)
 

 This doctrine is also laid down in 4 Dillon Municipal Corporations (5 Ed.), 3038, Section 1725, in language as follows:
 

 “No person, not even the adjoining owner,
 
 whether the
 
 fee
 
 of the street be in himself or in the public,
 
 has the right to do any act which renders the use of the street hazardous
 
 or less secure than it was left by the municipal authorities. Whoever does so, whether by
 
 excavations made in the sidewalk
 
 by the abutter, or by
 
 unsafe hatchways
 
 left therein, or by opening, or
 
 leaving open,
 
 an
 
 areaway
 
 in the pavement, or by
 
 undermining the street
 
 or sidewalk, or by
 
 placing imcmthorized obstructions thereon,
 
 which make the use of the street unsafe or less secure, is guilty of a nuisance, and is liable to any person who, using due care, sustains any special injury therefrom; and in such cases, the person who created or continues the nuisance is thus liable, irrespective of the question of negligence on his part.” See also
 
 Hayes
 
 v.
 
 Michigan Central Rd. Co.,
 
 111 U. S., 228, 235, 236, 28 L. Ed., 410, 4 S. Ct., 369.
 

 What has already been said with reference to notice to the village of Napoleon as to the dangerous condition of the underpass in question is also applicable to the defendant railroad company, and unless the plaintiff’s decedent can be charged with contributory negligence as a matter of law, there arose a question for the jury as to whether the railroad company had performed its' duty, under the circumstances, and the jury answered by its verdict in the negative.
 

 The record in this case presents a query to the court as to the theory of the case. The petition charges the defendants with “unlawfully and negligently” maintaining the railroad trestle or bridge over the public street, contact with which bridge caused the death of plaintiff’s decedent. The evidence in the record would
 
 *358
 
 sustain an action on either the theory of nuis'anee or negligence. The charge of the court is not made a part of the record and this court is unahle to say on what theory of right of action the case was submitted to the jury, but the court is of opinion that the record sustains the verdict of -the jury on either the theory, of nuisance or negligence."
 

 Even if the bridge of the defendant railroad was lawfully constructed over the street, the jury was entitled to consider whether it was negligently maintained at the time of the fatal accident to plaintiff’s decedent. Where an overhead railroad bridge, built and maintained by a railroad company within a municipality with the latter’s acquiescence and consent, originally met the reasonable requirements of travel over the street spanned by the bridge, but has since become insufficient in clearance above the street by reason of changed conditions in lawful modes of street travel, it is the duty of the railroad company to make such alterations in its bridge as become essential to -so meet changed conditions as to permit such travel with reasonable s'afety. A failure to perform such duty, resulting in injury to a person coming iji contact with such bridge while travelling upon the street underneath it, presents a jury question as to whether the railroad company was in the exercise of ordinary care in the premises:
 
 Cooke
 
 v.
 
 Boston & Lowell Rd. Corp., supra; Boston and Maine Rd.
 
 v.
 
 County Commrs. of Middlesex,
 
 239 Mass., 127, 131 N. E., 283;
 
 City of Olean
 
 v.
 
 Pennsylvania Rd. Co.,
 
 249 N. Y., 364, 164 N. E., 251;
 
 State, ex rel. City of Muncie,
 
 v.
 
 Lake Erie & Western Rd. Co.,
 
 83 F., 284. The court does not find any prejudicial error in the record as against the defendant railroad company on this assignment of error.
 

 The defendants also claim that the judgment herein should be reversed on the ground that the record shows Yankee, plaintiff’s decedent, to have been guilty of
 
 *359
 
 contributory negligence as a matter of law. There were motions filed by each of the defendants for judgment in their favor notwithstanding the verdict, such motions being based upon the pleadings, opening statement of plaintiff’s counsel, the evidence submitted on the trial, and answers to interrogatories submitted to the jury, bearing upon the issue of contributory negligence as a matter of law.
 

 Plaintiff’s cause of action, if she had one, arose on July 27, 1934, the date of her decedent’s death. Her petition was filed November 3, 1934, but the case was not tried until March, 1938. While Section 11601, General Code, providing for judgment notwithstanding the verdict, was amended, effective September 2, 1935, so as to permit the court upon such motion to give consideration to the evidence as well as to the pleadings, it did not become applicable in the trial of this ease which was pending before the amendment became effective, because of Section 26, General Code, which provides that the amendment of a statute shall not affect the remedy in pending actions unles's expressly provided for in the amendment itself, and there was no such provision in this amendment.
 

 The court, therefore, in considering the motion for judgment notwithstanding the verdict, was limited to the consideration of the pleadings and the findings of the jury, and could not look to the evidence. In the opinion of the court the petition in this case states a cause of action, and the pleadings do not disclose such admitted facts as would warrant the court in rendering judgment notwithstanding the verdict, based upon the pleadings.
 

 The evidence discloses that plaintiff’s decedent was not, himself, operating the truck but was riding upon it on the top of a load of beer cases, looking in a southerly direction as he approached the bridge to his' right. Apparently, it did not occur to him, to the operator of the truck, or to a passenger who was riding in the cab
 
 *360
 
 of the truck, that the vertical clearance under the bridge was insufficient or that a situation of danger was presented. As a matter of fact if the clearance had been a few inches higher, the accident would not have happened. The jury answered certain interrogatories as to evidentiary facts, indicating that Yackee was able to s'ee and could have seen the bridge and the bridge clearance before he reached it if he had looked, but that he did not do so.
 

 Under these circumstances, it was the duty of the jury to determine whether plaintiff’s decedent had exercised due care for his own safety. The jury, in rendering its verdict in favor of the plaintiff, necessarily found, as an ultimate issue of fact, that Yackee was not guilty of contributory negligence. Since the negligence of plaintiff’s decedent depended upon a variety of circumstances, from which reasonable minds might differ as' to whether there was contributory negligence, that issue became a question for the jury, and consequently, the court was not warranted in rendering a judgment in favor of the defendants notwithstanding the verdict. 29 Ohio Jurisprudence, 727 and 729, Section 200.
 
 Smith, Exr.,
 
 v.
 
 Toledo & Ohio Central Rd. Co.,
 
 133 Ohio St., 587, 15 N. E. (2d), 134
 

 The judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Day, Zimmerman, Williams, Myers and Matthias, JJ., concur.