BRELO & ROMANOFF, Partners, d. b. a. R. B. CONCRETE PRODUCTS CO., Plaintiffs-Appellants, v. NEW YORK CENTRAL RAILROAD COMPANY and CITY OF CLEVELAND, Defendants-Appellees.
TAYLOR, Plaintiff-Appellant, v. NEW YORK CENTRAL RAILROAD COMPANY and CITY OF CLEVELAND, Defendants-Appellees.

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 25115, 25129. Decided July 7, 1960.

*Mr. Irwin S. Haiman,* for plaintiffs-appellants Paul Brelo and Harry Romanoff, partners d. b. a. R. B. Concrete Products Co.

*Mr. Seymour Gross,* for plaintiff-appellant Lester G. Taylor.

*Mr. John F. Dolan* and *Mr. Joseph T. Ryan,* for defendant-appellee New York Central Railroad Co.

*Mr. Ralph S. Locher,* Director of Law, *Mr. Joseph H. Crowley,* and *Mr. Carl J. Grosclaude,* for defendant-appellee City of Cleveland.

For further history see *Omnibus Index* in bound volume.

SKEEL, J. These appeals come to this court from judgments entered for the defendants by the Common Pleas Court of Cuyahoga County in two cases after sustaining defendants' demurrers to each of the plaintiffs' petitions and after the plaintiffs notified the court that they did not wish to plead further. The demurrers alleged that each of the petitions did not state facts sufficient to constitute a cause of action. The actions are concerned with the same accident, one plaintiff being the

owner of a truck and the other the driver of such truck, each separate plaintiff seeking his separate damage, the claims of liability of each being identical.

The petitions allege the corporate capacity and business of the defendant railroad company and that the City of Cleveland as the "successor (municipal) corporation of the township of Rockport and the Village of Westpark, which are now part of the area making up the City of Cleveland, Ohio." It is alleged that there was a duly dedicated public highway running in a generally northerly and southerly direction formerly in said township and village; that the area through which it passed was incorporated into the City of Cleveland on January 3, 1923, and that said highway is now known as West 130th Street in said city.

It is alleged that in 1908 the defendant railroad company, together with the predecessor municipal authority (now the City of Cleveland) of the area involved, constructed a railroad bridge carrying the tracks of the railroad (running in an easterly and westerly direction) over what is now West 130th Street. It is alleged that West 130th Street is "an improved hard-surfaced roadway"; that the railroad bridge is constructed with steed girders, cross beams and steel sheets which extend across said public highway, the steel sheets being sharp and uncovered; that all of the traffic on West 130th Street at the point of the railroad separated grade intersection must pass under said bridge. It is then alleged: "Said West 130th Street is a concrete roadway approximately forty (40) feet wide, and the improved and traveled portion of said highway passes under said railroad bridge at a level approximately 12.44 feet beneath the lower surface of the Bridge." It is alleged that this clearance is wholly insufficient and unsafe for vehicles carrying loads and passengers and that on June 10, 1958, and for a long time prior thereto, such insufficient clearance was maintained by both defendants, each with the knowledge of the other.

The petitions further allege that in 1951 the Ohio Highway Department established and promulgated certain specifications dealing with the construction of bridges over public highways which require a clearance of fourteen (14) feet six

(6) inches and preferably fifteen (15) feet above the entire paved portion of the road with a clearance of twelve (12) feet six (6) inches above the width of the shoulder that might be subject to emergency vehicular use. It is alleged in Case No. 25115 that the plaintiffs' truck, which measures 12.5 feet in height, then being driven by plaintiffs' employee in a southerly direction on West 130th Street, struck the top of such truck against the bridge, whereby said truck was damaged; and in Case No. 25129, the plaintiff truck driver alleges that the top of the truck he was driving struck the bridge, causing the plaintiff to be thrown about in the cab of the truck, thereby receiving severe injuries as set out in his petition.

The allegation of negligence claimed in each petition is based entirely on the claimed fact that both defendants, each with the knowledge of the other, maintained insufficient clearance under the railroad bridge over West 130th Street, causing an unsafe condition for the use of the highway by modern traffic. These allegations in each petition are identical. Quoting the petitions in part:

"Plaintiff says that the continued maintenance of said overhead construction by the defendants was negligent and unlawful, and that the continuation of said condition was unsafe and exceedingly dangerous to vehicles and passengers using said highway as a means of public travel and that the same was on the tenth (10th) day of June, 1958, and for a long time prior thereto, unsafe, of insufficient clearance and highly dangerous as aforesaid, all of which was known by the Defendants."

It is the claim of both plaintiffs that the court was in error in holding that their respective petitions do not state a cause of action.

The allegations of the petitions are that the overhead bridge was built in 1908 "with the consent of the village of Rockport and in accordance with its then existing ordinances." The petitions also state that West 130th Street is a concrete roadway with a clearance between the travel portion of the roadway and the underside of the bridge of 12.44 feet, which was the condition on June 10, 1958, and for a long time prior thereto, which made that part of the roadway passing under the bridge unsafe because of "insufficient clearance" and there-

fore highly dangerous. There is no allegation that the claimed deficiency in clearance was occasioned by any acts of either defendant subsequent to the original construction of the bridge or in any event subsequent to October, 1949, when Section 5577.05, Revised Code, was amended, as hereafter quoted. Some suggestion is made in the briefs of the appellants that resurfacing either by the city or county may have caused the reduction in clearance but no such allegations are to be found in the pleadings and we must take the pleadings as we find them for the purposes of these demurrers.

The statute of Ohio dealing with the limitation of the height of motor vehicles that may be lawfully operated on the public highways of this state came into the statutes in 1921, when in 109 Ohio Laws, 546 (now Section 5577.05, Revised Code), the maximum height of motor vehicles was fixed at twelve (12) feet six (6) inches. Until 1957 this limitation remained unchanged except as to motor trucks carrying other vehicles, the maximum height of which was fixed at thirteen (13) feet six (6) inches in 123 Ohio Laws, 557, at page 558 (effective October 16, 1949). In this act, the following provision was added to the last paragraph of the statute:

"Provided further, that nothing herein contained shall be construed to require the state, a municipality, county, township, or any railroad or other private corporation to provide sufficient vertical clearance to permit the operation of such vehicle, or make any changes in or about existing structures now crossing streets, roads and other public thoroughfares in the State of Ohio."

The final amendment of this section (effective September 23, 1957) prior to the date of plaintiffs' alleged accident (June 10, 1958) provided for the maximum height of loaded or unloaded motor vehicles to be increased to thirteen (13) feet six (6) inches.

The maximum height permitted for motor vehicles for a year prior to the accident pleaded as the basis of plaintiffs' claims was therefore thirteen (13) feet six (6) inches and not twelve (12) feet six (6) inches. This fact makes it perfectly clear that if plaintiffs' allegations of defendants' duty to provide a clearance of twelve (12) feet six (6) inches can be maintained, such claim would be equally available in demanding a

clearance of thirteen (13) feet six (6) inches under an overpass existing prior to the amendment. Just what benefit would have availed the plaintiffs if the clearance had been twelve (12) feet six (6) inches with a vehicle also twelve (12) feet six (6) inches high, as pleaded, attempting to pass through and under such clearance, is hard to visualize.

This amendment also reenacted that part of the section last quoted exempting the state, a municipal corporation, the county, township, or railroad, or other private corporation from the necessity of providing sufficient clearance to meet the permitted height of motor vehicles legally permissible under the amendment, or to make changes in existing structures crossing public thoroughfares by reason of the new permissible maximum height of motor vehicles.

The exemptions thus provided came into the statutes almost ten years prior to the date that the plaintiffs claim to have suffered damage and injury as the sole proximate result of an alleged maintenance of insufficient clearance of a bridge then in the same structural condition that it was in when Section 5577.05, Revised Code, was amended (in part, as above quoted) in 1949 and reenacted in 1957, "and a long time prior thereto." There can be no doubt that the legislature intended by this amendment to nullify the law of the case of *Yackee* v. *Napoleon*, 135 Ohio St., 344, 21 N. E. 2d, 111 (1939). This purpose was clearly accomplished.

Section 5577.05, Revised Code, was passed in part to regulate the width, length and height of motor vehicles using the public roads of Ohio. It was not intended to regulate the minimum clearances of overpasses, of railroads or otherwise, or to create by legislation a nuisance out of every bridge in Ohio where the clearance, although sufficient when built, did not provide sufficient clearance to accommodate vehicles coming within the amended extension of motor vehicle height limits. The last paragraph of the amendment settles this question.

The petitions of the plaintiffs, therefore, do not state a cause of action, and the judgment of the Common Pleas Court is affirmed.

Exceptions. Order see journal.

HURD, P. J., and KOVACHY, J., concur.