**KENTUCKY FRIED CHICKEN OF CLEVELAND, INC., Plaintiff-Appellee,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 71–1960.

United States Court of Appeals, Fifth Circuit.

Oct. 7, 1971.

H. M. Ray, U. S. Atty., Oxford, Miss., Herbert H. Margolis, Civil Div., Dept. of Justice, Alan S. Rosenthal, James C. Hair, Jr., Dept. of Justice, Washington, D. C., for defendant-appellant.

Ney M. Gore, Jr., Marks, Miss., Harvey T. Ross, Clarksdale, Miss., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The single question presented by this appeal is whether the Secretary of Agriculture acted beyond the scope of his authority under the Food Stamp Act of 1964[1] in denying the application to participate as a "retail food store" in the Food Stamp Program filed by Kentucky Fried Chicken of Cleveland, Inc. (Kentucky Fried). If approved as a participant, Kentucky Fried would be authorized to receive stamps issued by the United States in exchange for its prepared foods, which stamps the government would redeem for cash. The court below held that the Secretary's action was unauthorized, and invalidated the denial of the application. We reverse.

The district judge's decision was based on the following findings of law and fact. First, the ready-to-eat food items Kentucky Fried sells fall within the Act's definition of "food,"[2] its business within the Act's definition of "retail food store"[3] and the persons to whom it proposes to sell within the Act's definition of "household."[4] Second, the legislative history negates the idea that so-called "luxury" food items are excluded from the program; in fact, foods similar to those Kentucky Fried sells may now be purchased with food stamps at certain supermarkets which are now approved as retail food stores by the Secretary. Finally, though the purposes of the Secretary's action here were commendable, the judge found those purposes could only be pursued in the Congress rather than the courts.

Our reversal turns on other "rules," "authority," and "discretion" which were given to the Secretary by the Act. For beyond its purely definitional aspects, the Act also provides:

§ 2011. It is hereby declared to be the policy of Congress * * * that the Nation's abundance of food * * * be utilized * * * to the maximum extent practicable to safeguard the health and well-being of the Nation's population and raise levels of nutrition among low-income households.

§ 2013 (a) The Secretary is authorized to formulate and administer a food stamp program under which * * * eligible households * * * shall be provided with an opportunity more nearly to obtain a nutritionally adequate diet. * * *

(c) The Secretary shall issue such regulations, not inconsistent with this chapter, as he deems necessary or appropriate for the effective and efficient administration of the food stamp program.

§ 2014 (a) Participation in the food stamp program shall be limited to those households whose income is determined to be a substantial limiting factor in the attainment of a nutritionally adequate diet.

1. 7 U.S.C.A. § 2011 et seq. (Supp.1970).

2. 7 U.S.C.A. § 2012(b) (Supp.1971).

3. 7 U.S.C.A. § 2012(f) (Supp.1971).

4. 7 U.S.C.A. § 2012(e) (Supp.1971).

§ 2016 (a) ·The face value of the coupon allotment which State agencies shall be authorized to issue to households certified as eligible to participate in the food stamp program shall be in such amount as will provide such households with an opportunity more nearly to obtain a low-cost nutritionally adequate diet.

§ 2017 (a) Regulations issued pursuant to this chapter shall provide for the submission of applications for approval by retail food stores  · * * * which desire to be authorized to accept and redeem coupons   * * * and for the approval of those applicants whose participation will effectuate the purposes of the food stamp program.  In determining the qualifications of applicants there shall be considered among such other factors as may be appropriate, the following: (1) the nature and extent of the retail or wholesale food business conducted by the applicant;  (2) the volume of coupon business which may reasonably be expected to be conducted by the applicant  * * *;  (3) the business integrity and reputation of the applicant.

§ 2019 (a) All practicable efforts shall be made in the administration of the food stamp program to insure that participants used their increased food purchasing power to obtain those staple foods most needed in their diets * * * *

■ Thus, it is not enough that an applicant for the program merely be a "retail food store" selling "food" to "households," as those words are defined.  The Act makes it plain that all such definitionally qualified stores are not ipso facto admitted to the program. If that were so, the criteria for approval of applicants, as stated in § 2017 above, would be a needless appendage to the Act.

■ Though it is true the legislative history of the Act indicates the Congress dismissed as impractical the idea of designating *which foods* could be purchased with the stamps, it does not follow that the Secretary has no authority to designate *which stores* should be authorized to receive the stamps.[5]  Since the Act provides that an eligible household is to receive only that amount of stamps "as will provide such household with an opportunity more nearly to obtain a low-cost nutritionally adequate diet," it is not unreasonable that the Secretary, in order to "effectuate the purposes of the food stamp program," looking to the "nature and extent" of Kentucky Fried's business, and considering other "factors" he deemed "appropriate," decided not to approve an applicant who sold only a limited variety of high-cost prepared foods.

■ The record indicates that the Secretary has exercised his discretion to approve only grocery establishments which stock a large number of low-cost staples hoping thereby to encourage among low-income groups the most economical use of their food stamp purchasing power.  Given the congressional directive and the prerogative vested in him, this is a reasonable choice on the Secretary's part, well within the scope of the executive powers reposed in him. That some of such approved establishments also stock high-cost prepared items similar to those Kentucky Fried sells is no more than an incidental, albeit an undesirable, circumstance.  It does not create a claim of disparate treatment which would invalidate his actions.  Approved "retail food stores" are only *indirect beneficiaries* of this program.  The Secretary has determined that stamp recipients will have that "opportunity more nearly to obtain a low-cost nutritionally adequate diet," which the Act was designed to afford them, if

5.  The government has contended, in the alternative, that Kentucky Fried does not fall into the Act's definition of "retail food store."  However, since we decide that the Secretary's denial was authorized even if Kentucky Fried does qualify for that definition, we do not reach the contention.

they buy from those establishments that stock a variety of low-cost staple items, than if they buy from those that stock none. Since we have decided that he was authorized to make that decision, we will not thwart the effectuation of his judgment merely to allow Kentucky Fried to share in the proceeds of those occasions when food stamps are used to purchase high-cost items.

Finding that the Secretary acted within his discretion, the judgment below setting aside the Secretary's administrative actions is

Reversed.