CAPRICORN COFFEES, INC., Petitioner,

v.

**Earl BUTZ, as Secretary of the U. S. Department of Agriculture, Food & Nutrition Service, Respondents.**

**No. C–75–0295–WWS.**

United States District Court,
N. D. California.

May 19, 1977.

Stephen Arian, San Francisco, Cal., for petitioner.

William T. McGivern, Jr., Asst. U. S. Atty., San Francisco, Cal., for respondents.

## MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW

WILLIAM W SCHWARZER, District Judge.

Petitioner is a wholesale and retail vendor of coffee, tea and spices. It seeks review of a determination by the Secretary of Agriculture withdrawing petitioner's certification to participate in the Food Stamp Program, 7 U.S.C. Secs. 2011 et seq. This Court has jurisdiction under 7 U.S.C. Sec. 2022.

Petitioner was first approved for participation in the Food Stamp Program in 1971. In 1974, respondent notified petitioner that its certification was being withdrawn. The letter of notification stated the following grounds:

> "It is our finding that authorization of your store to participate in the Food Stamp Program does not effectuate the purpose of the program. The Food Stamp Act provides that a food coupon recipient household will be given only that amount of coupons which is determined to be the cost of a nutritionally adequate diet. It further requires that the program be administered to ensure that participants use their increased food purchasing power to obtain those staple foods most needed in their diets. In accordance with these provisions of the Food Stamp Act, only those firms which carry a sufficient stock of low-cost basic or necessary foods should be authorized to participate in the program.

> "Your store sells individual blends of coffees and teas prepared to customer specifications. The cost to the purchaser for these individualized blends is substantially higher than competitive costs for standard brands of coffees and teas normally considered staple or basic foods. Since you sell primarily luxury-type food items, it is our determination that the nature and extent of your business do not justify authorization of your store to participate in the program."

Following administrative review of this action, petitioner filed its petition for review in this Court in February, 1975, alleging that respondent's action was unlawful as being in excess of his statutory authority and as a denial of petitioner's Fifth Amendment equal protection rights. The action came on for trial before this Court on May 9, 1977. The parties have stipulated, and the Court finds, that the issues presented by the complaint may be decided upon the pleadings, briefs and affidavits on file, and that there are no disputed issues of material fact.

I.

Congress established the Food Stamp Program in 1964 for the dual purpose of utilizing surplus food produced in the United States and raising the level of nutrition among low-income households, 7 U.S.C. Sec. 2011. It vested broad authority in the Secretary of Agriculture to "formulate and administer" the program, 7 U.S.C. Sec. 2013(a). The act directs that

> "All practicable efforts shall be made in the administration of the food stamp program to insure that participants use their increased food purchasing power to obtain those staple foods most needed in their diets . . ." (7 U.S.C. Sec. 2019(a)).

The act does not define or describe staple foods.[1] It does, however, direct the Secretary to make two relevant determinations controlling the scope and effect of the program: first, to determine the amount of food stamps to be allotted to any eligible household on the basis of the cost of a nutritionally adequate diet, 7 U.S.C. Sec. 2016(a); and second, to determine which retail food stores and wholesale food concerns shall be authorized to accept and redeem food stamps, 7 U.S.C. Sec. 2017(a). With respect to the second determination, the act provides that the Secretary must consider whether a food store's participation "will effectuate the purposes of the food stamp program." The act further states in this regard:

"In determining the qualifications of applicants [food stores] there shall be considered among such other factors as may be appropriate, the following: (1) the nature and extent of the retail or wholesale food business conducted by the applicant . . . ." (7 U.S.C. Sec. 2017(a)).

The Secretary has delegated his authority to make these determinations to the Food and Nutrition Service of the Department of Agriculture ("FNS"), 7 C.F.R. Part 270 et seq. FNS has issued Instruction 741-2, entitled "Criteria for Authorization, Denial and Withdrawal of Authorization . . . for Participation of Retail and Wholesale Firms." The Instruction contains guidelines on the basis of which FNS determines the eligibility of food stores to participate in the program. Its action in this case, terminating petitioner's participation, was based on paragraph III, A, 14, which states in relevant part:

"*Stores Selling Luxury Foods or Foods of Low Nutritional Value.* Stores whose primary business is the sale of . . .

high-cost luxury items, such as caviar, special blends of coffee and tea, or fancy cheeses, should not be authorized because they do not enable food coupon recipients to obtain a low-cost nutritious diet and, therefore, do not effectuate the purpose of the FS Program . . . ."

## II.

Petitioner's primary business is the sale, at retail and wholesale, of so-called specialty brands of coffee and tea. Specialty brands are sold at a price per pound which is higher than the price for standard brands of coffee and tea sold at supermarkets and food stores generally.[2]

Petitioner contends first that respondent's action denies it the equal protection of the laws because it arbitrarily excludes vendors of only coffee and tea from the program, while other single-staple vendors are permitted to participate. Bakeries and meat markets, for example, are evidently authorized to participate even though they may sell only premium priced products. In making the argument, plaintiff relies on *U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973), in which the Supreme Court struck down as violative of the Fifth Amendment a statutory exclusion from eligibility under the food stamp program of households containing an individual who is unrelated to any other member of the household. The Court held the statutory classification of households to be "clearly irrelevant to the stated purposes of the Act", 413 U.S. at 534, 93 S.Ct. at 2824, see pp. 918–919, above.

The same cannot be said of a classification of food stores (which are not intended to be the primary beneficiaries of the program) based on the sale of premium coffees and teas. The Secretary could rationally

---

1. Sec. 2012(b) defines "food" to mean "any food or food product for home consumption except alcoholic beverages and tobacco . . . ."

2. The parties agree that supermarkets and other food stores may also sell specialty brands of coffee and tea but, if they do, it is merely incidental to the sale of lower-priced standard brands.

determine that coffee and tea, although regarded as staples in the American diet, make only an insignificant contribution toward a "nutritionally adequate diet", and that participation of food stores selling only premium-priced coffee and tea will not effectuate the purposes of the food stamp program to dispose of agricultural surpluses and raise the level of nutrition of low-income families.

■ Petitioner's second argument raises more difficult questions. Petitioner contends that the Secretary exceeded his statutory authority when acting to exclude food stores from participation in the program essentially on the basis of the price charged for the product. It points to Section 2015(b) of the act which states that

"nothing in this chapter shall be construed as authorizing the Secretary to specify the prices of which food may be sold by wholesale food concerns or retail food stores."

It also points to the legislative history which shows that Congress regarded the question whether a particular food item was a luxury food as one which depended on season and location and was not susceptible of objective determination. Congress therefore sought to leave it to the recipient to determine whether any particular item, at the time and place of purchase, was a luxury food. Senate Report No. 1124 contains the following statement on this subject:

"Section 3. Definition of food

"The committee amendment to section 3(b) would simplify the definition of food to make it administratively workable.

"As the bill passed the House 'soft drinks, luxury foods, luxury frozen foods as determined by the Secretary, and those foods which are identified on the package as being imported from foreign sources when they arrive at the retail store' were excluded from the definition of food. This exclusion presented insurmountable administrative problems. According to the dictionary definition soft drinks are those not containing spirituous liquor so that milk, orange juice, coffee, and other beverages would technically be excluded. At the same time cookies, cake, and candy would not be excluded. Luxury foods and luxury frozen foods are rather indefinite terms. Fruits and vegetables might be luxury or nonluxury foods, depending upon whether they were in season, or upon the price at which they might be sold by the particular store on a particular day. The task of making up any reasonable classification of all foods into luxury and nonluxury foods does not appear to be one that could be accomplished with any exactitude. Any such list would also appear to require constant changing from day to day, area to area, and possibly even store to store. The retailer and the consumer, attempting to comply with the program, as well as the Secretary, would be faced with a difficult and confusing situation. The committee therefore recommends deleting the exclusion of soft drinks and luxury foods from the bill.

"This, of course, does not mean that the committee has any intention that coupon recipients will use their coupons for high cost foods. The committee has recommended an amendment to section 7(a) restricting the value of the coupons issued to any household to that which will enable it more nearly to obtain a 'low cost' nutritionally adequate diet. It is the committee's intention that the coupons will enable recipients to obtain a 'low cost' diet, and the recipients will have to restrict themselves to nonluxury foods in order to achieve that diet.

"Experience shows that the coupon recipient is in a far better position than the Secretary to determine what would be a luxury food for him at the time and place he makes his purchase. Detailed studies were made by the research agencies of the foods being purchased and used by households participating in the program in two of the original eight pilot areas. These studies showed that food stamp households concentrated their purchases on good basic foods. For example, fruit and vegetable consumption was largely

accounted for by seasonally abundant fresh items—potatoes, greens, tomatoes, cabbage, apples, and assorted citrus fruits. Among the dairy products, fluid milk, evaporated and dry milk, and cottage cheese accounted for 90 percent of the value of the consumption." (1964 U.S.Code Cong. and Admin.News, pp. 3283–3284)

In enacting the Food Stamp Program, Congress did not accept the proposed exclusion of luxury foods from the definition of "food", and instead provided that " 'food' means any food or food product for home consumption except alcoholic beverages and tobacco . . . ", 7 U.S.C. Sec. 2012(b).[3] These statutory provisions and the legislative history give rise to some doubt as to the propriety of Instruction III, A, 14, which excludes food stores from participation on the basis of their selling primarily high-cost luxury items.

The Court must consider, however, that at the same time, Congress has directed the Secretary to make "all practicable efforts . . . to insure that participants use their increased food purchasing power to obtain those staple foods most needed in their diets . . . ", 7 U.S.C. Sec. 2019(a). Effectively the only means given the Secretary by the act to carry out that directive is to fix the value of stamps allotted to households and determine which food stores may be authorized to accept and redeem them. The Court, therefore, finds it difficult to determine that the Secretary acted outside the scope of his statutory authority in taking action which appears to be reasonably calculated to serve the purpose of the Food Stamp Program.

The Court finds persuasive the reasoning of the Court of Appeals in *Kentucky Fried Chicken of Cleveland, Inc. v. United States,* 449 F.2d 255 (5th Cir., 1971). There the appellate court reversed a district court determination setting aside the Secretary's exclusion of Kentucky Fried Chicken establishments from the program. Although the decision is distinguishable in that it involved prepared food, rather than ingredients for home cooking, the reasoning is squarely in point:

"Thus, it is not enough that an applicant for the program merely be a 'retail food store' selling 'food' to 'households,' as those words are defined. The Act makes it plain that all such definitionally qualified stores are not ipso facto admitted to the program. If that were so, the criteria for approval of applicants, as stated in § 2017 above, would be a needless appendage to the Act.

"Though it is true the legislative history of the Act indicates the Congress dismissed as impractical the idea of designating *which foods* could be purchased with the stamps, it does not follow that the Secretary has no authority to designate *which stores* should be authorized to receive the stamps. Since the Act provides that an eligible household is to receive only that amount of stamps 'as will provide such household with an opportunity more nearly to obtain a low-cost nutritionally adequate diet,' it is not unreasonable that the Secretary, in order to 'effectuate the purposes of the food stamp program,' looking to the 'nature and extent' of Kentucky Fried's business, and considering other 'factors' he deemed 'appropriate,' decided not to approve an applicant who sold only a limited variety of high-cost prepared foods.

"The record indicates that the Secretary has exercised his discretion to approve only grocery establishments which stock a large number of low-cost staples hoping thereby to encourage among low-income groups the most economical use of their food stamp purchasing power. Given the congressional directive and the prerogative vested in him, this is a reasonable choice on the Secretary's part, well within the scope of the executive powers reposed in him. That some of such approved establishments also stock

---

**3.** As originally adopted, the act also excluded imported meats and food identified as imported on the package. This exclusion was eliminated by a 1973 amendment to the act. 1973 U.S. Code Cong. & Admin.News, p. 1791.

high-cost prepared items similar to those Kentucky Fried sells is no more than an incidental, albeit an undesirable, circumstance. It does not create a claim of disparate treatment which would invalidate his actions. Approved 'retail food stores' are only *indirect beneficiaries* of this program. The Secretary has determined that stamp recipients will have that 'opportunity more nearly to obtain a low-cost nutritionally adequate diet,' which the Act was designed to afford them, if they buy from those establishments that stock a variety of low-cost staple items, than if they buy from those that stock none. Since we have decided that he was authorized to make that decision, we will not thwart the effectuation of his judgment merely to allow Kentucky Fried to share in the proceeds of those occasions when food stamps are used to purchase high-cost items." (449 F.2d at 257–258, footnotes omitted)

It may well be that, as petitioner contends, its participation in the program will benefit low-income residents in the neighborhood and will not conflict with the purpose of the act. But inasmuch as it is not disputed that the particular instruction applies to petitioner by its terms, the only question is whether the instruction is lawful and its enforcement within the Secretary's discretion. The Court is compelled to conclude that the answer to that question is affirmative.

For the reasons stated, defendant is entitled to judgment.

IT IS SO ORDERED.