455 F.Supp. 169 (1978)
Gordon WOLFF d/b/a Fair Lee Market, Plaintiff,
v.
UNITED STATES of America, DEPARTMENT OF AGRICULTURE, FOOD AND NUTRITION SERVICE, Defendant.
No. 77-1036C(2).
United States District Court, E. D. Missouri, E. D.
June 23, 1978.
*170 Gerald A. Rimmel, Susman, Schermer, Willer & Rimmel, St. Louis, Mo., for plaintiff.
Robert D. Kingsland, U. S. Atty., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendant.

MEMORANDUM
WANGELIN, District Judge.
This is an action to review a decision of the Food and Nutrition Service of the United States Department of Agriculture. The Court has jurisdiction pursuant to 7 U.S.C. §§ 2020 and 2022. The case was tried without a jury and the Court has carefully reviewed the entire record. The following discussion constitutes the Court's findings of fact and conclusions of law.
The center of this controversy is a grocery store at the intersection of Fair and Lee in St. Louis, Missouri. In 1975 the store was known as the Gateway Market and was owned by Danny Copilevitz. In that year Gateway was investigated by the Food and Nutrition Service and was found to be in serious violation of U.S.D.A. Regulations. As a result Gateway was disqualified from participating in the Food Stamp program for one year.
During the period of disqualification the inventory of Gateway was purchased by plaintiff, Gordon Wolff. Wolff had been the accountant for Copilevitz and Gateway. The owner of the realty, Copilevitz's father, leased the property to plaintiff. Because ninety to ninety five per cent of Gateway Market's customers were food stamp recipients the sale was contingent upon plaintiff obtaining authorization to accept food stamps.
Plaintiff's initial application for approval was denied. The Department, because of *171 plaintiff's prior relationship to Copilevitz and his intention to employ Copilevitz at the store, took the position that plaintiff was too closely related to Copilevitz to be authorized. Plaintiff took an administrative appeal and eventually received authorization to accept food stamps doing business as Fair-Lee Market. The decision of the review officer granting plaintiff authority was conditioned on plaintiff assuring the Department that Copilevitz would not be involved in food stamp transactions.
In October of 1976, the Food and Nutrition Service investigated Fair-Lee Market. An investigator hired four aides to shop at Fair-Lee Market and attempt to purchase various items with food stamps. On six of seven attempts Fair-Lee clerks sold "non-eligible" items to aides in exchange for food stamps. The aides were also given their change for food stamp purchases in cash. Both practices violated U.S.D.A. regulations.
Plaintiff was contacted concerning these violations and gave a statement to U.S.D.A. investigators. Several months later an administrative charge was filed. Plaintiff contested the charge, which resulted in a one year disqualification. The finding that plaintiff had violated Department regulations and the sanction imposed were both reviewed administratively. The review ended with the decision of a food stamp review officer affirming the suspension. Plaintiff, having exhausted his administrative remedies, brought this suit challenging his disqualification.
Section 11 of the Food Stamp Act, 7 U.S.C. § 2020, provides that:
Any approved retail food store or wholesale food concern may be disqualified from further participation in the food stamp program on a finding, made as specified in the regulations, that such store or concern has violated any of the provisions of this chapter, or of the regulations issued pursuant to this chapter.
The regulations promulgated under this Act require that food stamps be accepted only for certain items. 7 C.F.R. § 272.2(b). In general, non-food items are considered "ineligible". A suspension of up to three years may be imposed for a violation. 7 C.F.R. § 276.6(a).
The scope of review of Department action by this Court is governed by § 13 of the Act, 7 U.S.C. § 2022(c):
The suit in the United States district court or State court shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue. If the court determines that such administrative action is invalid it shall enter such judgment or order as it determines is in accordance with the law and the evidence.
The term trial de novo in § 13 has always been construed to require the district court to hear evidence concerning the alleged violation. Such evidence was presented and it must be concluded that plaintiff did violate the regulations as charged. The argument that plaintiff was entrapped is without merit. Although the aides might not have presented their groceries to plaintiff's clerk in a manner strictly comporting to Department regulations, they did not solicit a violation. If anything, their conduct was neutral. It is ludicrous to suggest, as plaintiff does, that the failure to orally state an intention to make a food stamp purchase at a store where ninety five per cent of the customers use food stamps could be misleading. Thus, this part of the Department's decision is affirmed.
Courts have disagreed about the scope of review under § 13 regarding the sanctions imposed. The Sixth and Seventh Circuit Court of Appeals have held that the trial de novo does not extend to the penalty. Martin v. United States, 459 F.2d 300 (6th Cir. 1972), cert. denied, 409 U.S. 878, 93 S.Ct. 129, 34 L.Ed.2d 131; Nowicki v. United States, 536 F.2d 1171 (7th Cir. 1976). The Fourth and Fifth Circuit Court of Appeals have held that the Department's penalty may be reviewed under the arbitrary and capricious standard. Cross v. United States, 512 F.2d 1212 (4th Cir. En Banc 1975). Goodman v. United States, 518 F.2d 505 (5th Cir. 1975). In Kogan v. United States, 426 F.Supp. 1064 (E.D.Mo.1976) this *172 Court expressly declined to choose between the two approaches, concluding that the penalty would stand under either.
This case does not present such an easy question. After weighing various consideration this Court adopts the position of the Fourth and Fifth Circuits and extends this review to the penalty imposed. Further, it must be concluded that the Department abused its discretion and acted in an arbitrary and capricious manner. The one year suspension imposed is severe on its face. It exceeds most of the other penalties imposed in this area, even those given for serious violations. Further, it is in excess of the Department's own informal guidelines.
These factors alone would probably not justify disturbing the penalty. However, the Department did not exercise good faith in assessing this penalty. It is clear that defendant went outside the record and penalized plaintiff not just for the October, 1976 violations, but also for his association with Gateway Market. Specific reference is made to pages 69 and 70 of defendant's Exhibit A, which illustrates the Department's hostile attitude towards plaintiff during the investigation. This was simply not appropriate, particularly after that same issue had been decided in a previous Department proceeding.
Considering the circumstances, the Court believes that a suspension of not more than four months is warranted. Accordingly, defendant will be ordered to reduce the penalty. All other relief is denied.