## J. C. BUSH

v.

## UNITED STATES of America and United States Department of Agriculture's Food and Nutrition Service.

### Civ. A. No. 79–1636.

United States District Court,
E. D. Pennsylvania.

July 16, 1979.

---

Joseph E. Coleman, Philadelphia, Pa., for plaintiff.

Peter F. Vaira, U. S. Atty., Gary Tilles, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff, J. C. Bush, brought this civil action against the United States for review of a decision of the Department of Agriculture's Food and Nutrition Service [hereinafter the FNS] withdrawing his authorization to participate in the Federal Food Stamp Program, 7 U.S.C. §§ 2011 et seq. Plaintiff, the owner of Bush's Gold Medal Market # 2, a retail food store, was authorized to accept food stamps from customers in exchange for eligible food items and to redeem the stamps for cash or additional inventory. FNS withdrew that authorization after plaintiff pleaded guilty to charges of illegally purchasing large quantities of food stamps at a discount in violation of the Food Stamp Act of 1976, 7 U.S.C. § 2024(b) [hereinafter the Food Stamp Act]. The parties having agreed, the Court granted a stay of the administrative action pending the final determination of the matter by the Court.

The Food Stamp Act (7 U.S.C. § 2023) and its implementing regulation (7 C.F.R. § 273.10) provide that any retail food store aggrieved by final administrative action denying it authorization to participate in the Food Stamp Program or disqualifying it from such participation may obtain de novo judicial review of the administrative action in the United States District Court for the district in which the store's owner resides or does business.

The trial de novo provision of 7 U.S.C. § 2023 is broader than the review standard provided in the Administrative Procedure Act, 5 U.S.C. §§ 500 et seq., since it requires the Court to examine all the issues raised and not merely to determine whether the administrative findings are supported by substantial evidence. The Court must reach its own factual and legal conclusions and is not limited to matters considered in the administrative proceedings. Modica v. United States, 518 F.2d 374, 376 (5th Cir. 1975); Saunders v. United States, 507 F.2d 33 (6th Cir. 1974). In considering the factual basis of the administrative determination, the Court must consider the storeowner's evidence, as well as the Government's evidence, and the burden is on the plaintiff to prove, by a preponderance of the evidence, that the agency's factual determination is incorrect. Goodman v. United States, 518 F.2d 505, 511 (5th Cir. 1975); Modica v. United States, supra. In reviewing the administrative sanction imposed, however, whether the sanction is a denial of authorization under 7 U.S.C. § 2018 or a disqualification from participation under 7 U.S.C. § 2021, the Court is limited in its scope of review to a determination as to whether the sanction imposed is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Cross v. United States, 512 F.2d 1212 (4th Cir. 1975); Goodman v. United States, 518 F.2d 505 (5th Cir. 1975); Wolff v. United States, 455 F.Supp. 169 (D.Mo.1978). As stated by the Court in Cross, supra at 1217-18:

In concluding that the district court must afford review to the sanction of disqualification where, as here, the fact of violation is not contested, or where in other cases the district court finds de novo that a violation occurred, we add a word about the scope of judicial review. Due process on the issue of sanction requires that the punishment follow rationally from the facts, be authorized by the statute and regulations, and aim toward fulfillment of the Act's purposes. The standard of review which is employed in the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), the Welch concurrence, and the Shurkin majority, is that the court shall decide whether the administrative sanction is "arbitrary or capricious." Section 2022 itself requires the district court to review the sanction for "validity." As recently reiterated in Butz v. Glover Livestock Commission Co., 411 U.S. 182, 185-86, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973), "the Secretary's choice of sanction . . . [is] not to be overturned unless . . . it [is] 'unwarranted in law or . . . without justification in fact . . . .'"

We deem all three of these expressions synonymous and they define the due process which we hold must be afforded. To be "valid," a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact. Thus, the scope of review of a sanction is not as broad as the scope of review of the fact of violation. The more limited scope of review of a sanction results from the vesting of discretion by Congress in the Secretary to devise and administer a scheme of disqualifications (7 U.S.C. § 2020) for the effective and efficient administration of the Food Stamp Program (7 U.S.C. § 2013(c)). (footnotes omitted).

As in *Cross, supra,* the fact of violation is not contested—it is admitted. Our review is therefore limited to the determination of whether the sanction imposed is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In this case, the sanction imposed by FNS was the withdrawal of plaintiff's authorization to participate in the Food Stamp Program.

The Court held a hearing on June 20, 1979, at which hearing the parties stipulated as to the following facts: On several occasions, plaintiff violated the Food Stamp Act by purchasing large quantities of food stamps from an undercover agent of the Department of Agriculture; the price paid for these stamps was far below their face value. The plaintiff was arrested and after his arrest returned many of the illegally purchased stamps to the Government. Plaintiff entered a guilty plea to two counts of unlawful acquisition of food stamps in violation of 7 U.S.C. § 2024(b) and one count of conspiracy to unlawfully acquire and present food stamps for redemption in violation of 18 U.S.C. § 371. The Court suspended sentence and placed the plaintiff on probation for a period of three years and imposed a fine of $4,000.[1] The Government retained $14,500, the sum paid by the plaintiff to the undercover agent for the stamps which stamps plaintiff later returned to the Government. Subsequent to the imposition of sentence, FNS notified the plaintiff by letter dated January 12, 1979 that his authorization to participate in the Food Stamp Program was withdrawn, effective ten days after receipt of the letter. Plaintiff requested administrative review of this administrative determination, and, in a letter dated April 4, 1979, he was advised by a Food Stamp Review Officer that the decision to withdraw authorization was sustained. The plaintiff then appealed to this Court where he now challenges FNS' withdrawal of approval to participate in the Food Stamp Program on several grounds. He contends that such withdrawal is in excess of FNS' authority under applicable statutes and regulations, that it is without justification in fact in that he claims to be a man of business integrity with a good reputation for honesty, and that it will result in undue hardship to food stamp recipients who live in the vicinity of his store.

FNS is charged with the administration of the Food Stamp Program. 7 C.F.R. § 270.3(a). Among its duties are the approval and supervision of participating food stores. 7 C.F.R. § 272.1. FNS' January 12, 1979 letter to plaintiff states that his pleas of guilty to charges of violating the Food Stamp Act adversely reflect on his business integrity and indicate that he is not willing or able to abide by the regulations governing administration of the Food Stamp Program and that his continued participation would not effectuate the purposes of the Food Stamp Act.

The Food Stamp Act[2] and the implementing regulations[3] governing approval

---

1. *United States v. Bush,* Cr. No. 78–315–1 (E.D.Pa. Dec. 15, 1978) (Judgment and Probation/Commitment Order of Green, J.).

2. 7 U.S.C. § 2018(a) provides in pertinent part:
   . . . In determining the qualifications of applicants, *there shall be considered* among such other facts as may be appropriate the following: (1) the nature and extent of the food business conducted by the applicant;
   (2) the volume of coupon business which may reasonably be expected to be conducted by the applicant; and (3) *the business integrity and reputation of the applicant.* (emphasis supplied).

3. 7 C.F.R. § 272.1(b) provides:
   An applicant shall provide sufficient data on the nature and scope of the firm's business

of retail food stores' participation in the Food Stamp Program provide that the business integrity and reputation of those seeking to participate in the Program shall be considered in deciding whether or not to authorize their participation. In addition, the Food Stamp Act (7 U.S.C. § 2018) provides:

> (c) Regulations issued pursuant to this chapter shall require an applicant retail food store . . . to submit information which will permit a determination to be made as to whether such applicant qualifies, or *continues to qualify*, for approval under the provisions of this chapter or the regulations issued pursuant to this chapter. (emphasis supplied).

The fact that the Food Stamp Act specifically mentions "whether such applicant . . . continues to qualify" clearly indicates that Congress intended to authorize the Secretary of Agriculture, and FNS on behalf of the Secretary, to review the qualifications of one authorized to participate in the Food Stamp Program and to withdraw such authorization on the basis of a factual finding that he no longer qualifies for participation in the Program. *See Spurs v. United States*, 424 F.Supp. 977 (W.D.La. 1977); *see also Webb v. Berglund*, C.A.No. 79–637 (E.D.Pa., May 30, 1979); *Williamson v. Butz*, 438 F.Supp. 126 (E.D.N.C.1977); *Capricorn Coffees v. Butz*, 432 F.Supp. 917 (N.D.Cal.1977). Pursuant to this statutory

mandate, the Regulations provide that FNS "shall withdraw approval" to participate in the Program whenever a determination is made that one does not qualify for continued participation.[4]

Plaintiff contends that FNS permanently withdrew his authorization to participate in the Program and that permanent withdrawal of authorization is contrary to the statutory and regulatory scheme for the enforcement of the provisions of the Food Stamp Act set forth in 7 U.S.C. § 2022 and 7 C.F.R. § 272.6. These sections provide that FNS may impose a period of disqualification on participating firms found to have violated the Food Stamp Act or the implementing regulations, and that the period of disqualification may not exceed three years.[5]

However, as stated by the Court in *Spurs, supra* at 980–81:

> FNS did not seek to disqualify Spurs under 7 C.F.R. § 272.6. Instead, it withdrew approval under 7 C.F.R. § 272.1, *supra*. A disqualification is limited to a maximum of three years, but it is designed to punish grocers who fail to keep adequate records, who accept stamps for non-food items, and other similar infractions. Neither the statute nor the regulation dealing with disqualifications mentions or implies anything concerning reputation or general business integrity. Instead, disqualification deals with infractions unrelated to the approval require-

---

**4.** 7 C.F.R. § 272.1(h) provides:

FNS will periodically review the nature and scope of participating firms' business. If FNS receives new or additional information

for FNS to determine whether such applicant's participation will effectuate the purposes of the program. In making such determination FNS shall consider:
(1) The nature and extent of the food business conducted by the applicant;
(2) The volume of coupon business which may be reasonably expected to be done by the applicant;
(3) The business integrity and reputation of the applicant; and
(4) Such other factors as FNS considers pertinent to the application under consideration.

about a firm involving any of the criteria set forth in paragraphs (b), (c), and (d) of this section, FNS shall make a determination as to whether the firm's continued participation serves to further the purposes of the program. *FNS shall withdraw approval to participate if a determination is made that the firm does not qualify for continued participation.* (emphasis supplied).

**5.** 7 C.F.R. § 272.6 provides in pertinent part:
(a) Any authorized retail food store, authorized meal service, or authorized wholesale food concern may be disqualified from further participation in the program by FNS for a reasonable period of time, not to exceed three years, as FNS may determine, if such firm fails to comply with the Food Stamp Act or the provisions of this part. . . .

ments. On the other hand, both the statute and the regulation dealing with approval expressly mention "business integrity" and "reputation" of the grocer.

To make the distinction, then, one can be disapproved when he lacks such things as business integrity and reputation, while he can be disqualified when, though earlier approved, he commits an infraction such as selling non-food items for stamps. Approval is not a single, final determination made at the outset of the grocer's participation, rather, it is a continuing requirement—one which the law permits to be withdrawn at any time for good cause, which here clearly has been proven to the hilt. (footnotes omitted).

Likewise, in this case, FNS did not seek to disqualify plaintiff pursuant to 7 C.F.R. § 272.6, but withdrew approval pursuant to 7 C.F.R. § 272.1. Furthermore, there is nothing in the Food Stamp Act or the Regulations stating that a withdrawal of approval to participate is permanent. Neither FNS's January 12, 1979 letter to plaintiff nor the Food Stamp Review Officer's April 4, 1979 letter states that plaintiff is forever barred from participation in the Program. As stated by the Court in *Spurs, supra* at 981:

> Consequently, we affirm the administrative withdrawal of Spurs' approval, and he must henceforth reapply and be reapproved in order to participate in the food stamp program. He can be reapproved after meeting the other requirements of 7 U.S.C. § 2017, if, but only if, he can show convincingly the negative reflection on his business integrity and reputation caused by his convictions no longer exists. Of course, this must be done administratively, not in a Court action.

At the hearing the Court heard testimony that withdrawal of plaintiff's authorization would cause undue hardship to food stamp recipients in the community where his store is located. The Court finds, on the basis of evidence presented by the Government, that there are several food stores in the community which accept food stamps and that the withdrawal of plaintiff's authorization will not be a hardship to food stamp recipients who live in the community.

■ This Court finds that the sanction imposed—the withdrawal of plaintiff's authorization—was not arbitrary, capricious, or an abuse of discretion, nor was it otherwise not in accordance with law. Plaintiff's pleas of guilty to Counts 3 and 4 of the indictment [6] charging him with unauthorized acquisition, use and possession of food stamps, and Count 5 of the indictment, charging him with conspiracy to unlawfully acquire and present food stamps for redemption, provide ample basis for the Administration's determination that plaintiff's continued participation in the Food Stamp Program does not further the purposes of the Program and that plaintiff does not qualify for continued participation on the basis of his "business integrity and reputation". Furthermore, as heretofore pointed out, the Court finds that the withdrawal of plaintiff's authorization will not cause undue hardship to food stamp recipients in the community.

Accordingly, an Order will be entered affirming the action taken by FNS.

This Memorandum is in lieu of findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).