# SEABOARD AIR LINE RAILWAY *v.* CITY OF RALEIGH.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NORTH CAROLINA.

No. 59.  Argued November 1, 1916.—Decided November 20, 1916.

Herein the action of the Board of Aldermen of the City of Raleigh in assuming to grant to a railroad company "permission to occupy" a sidewalk with a spur track is *held,* in the circumstances stated in the opinion, to have amounted at most to the conferring of a mere revocable license.

The general principle reiterated that what seems on its face a mere license by a municipality may not be converted into a contract by resort to general implications.

The exception which allows duration and contractural quality to be attributed by implication alone to particular privileges, whose continued enjoyment is vitally and essentially related to enduring powers and duties of a corporate grantee, has no application to a case like this, where the action of the city, concerning a mere permission to exercise a facility as a license, occurred long after the railway corporation was created and established in business and was in no way necessary for the discharge of its corporate functions.

Long occupation and use of the spur track for railroad purposes, with the assent of the city, could not create a permanent right.

219 Fed. Rep. 573, affirmed.

THE case is stated in the opinion.

*Mr. Murray Allen* for appellant.

*Mr. Jno. W. Hinsdale, Jr.,* for appellees.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

Upon the assumption that contract rights protected by the Constitution of the United States would be violated, the bill sought to restrain the enforcement of an ordinance which directed the removal of a spur track on a sidewalk on a designated street and block. On the bill, answer and on agreed facts the court refused an injunction on the ground that there was no contract right in existence and, treating this conclusion as going to the vitals of the whole case, dismissed the bill, and a direct appeal was taken.

Although there are fourteen assignments of error, but one question arises, Was there a contract, since leaving out mere forms of statement all the assignments concern this single question and we come to its solution. In doing

so, to avoid that which is superfluous, we concede for the sake of the argument only that the city had the lawful authority to make a contract concerning the track on the street and sidewalk in question. With this argumentative concession the question then is, not what there was power to do, but what was done, and to solve it requires a brief statement.

In 1835 the Raleigh & Gaston Railroad Company, to whose rights it is conceded the complainant and appellant succeeded, was authorized to and shortly afterwards built a railroad from Gaston to Raleigh, North Carolina. Entering the latter city through its streets with its consent and building therein machine shops, a railroad yard and other facilities, the main tracks of the railroad curved into a block which the company had bought and upon which it established its terminals, bounded on the front or west by Salisbury street, on the rear or east by Halifax street, and on the north and south by North and Lane streets. Many years subsequently, in 1881, on the block just below and on the same side of Salisbury street a cotton compress had been built fronting on Salisbury street and abutting on the sidewalk on that street. In that year the railroad company asked permission of the city authorities to extend a track to and along the sidewalk on the block in front of the compress, which was granted, the official record of the consent of the city having been manifested by the following entry in the minutes of the Board of Aldermen: "Upon application of John C. Winder, General Superintendent, the Raleigh and Gaston Railroad Company was granted permission to occupy the sidewalk on the east side of Salisbury street, between Jones and Lane streets, for the purpose of running a track." In virtue of this consent a spur track projecting from the main tracks as they curved into the terminal block, was built which ran down to and upon the sidewalk in front of the compress. For

many years this track was used for business going in and out of the compress, as well as for the general purposes of the railroad. In 1906, however, the compress ceased to be operated, and subsequently (about 1910 or 1911) the railroad company, owning the block on which the compress was situated, removed the same and built upon the block a warehouse. It was not possible, however, from the track on the sidewalk to directly reach such warehouse, as along the block where it fronted on Salisbury street tracks were laid between the warehouse and the spur track which for the purposes of the railroad were depressed below the level of the street and sidewalk, and thus the spur track on the sidewalk was only available for parking cars or as a team track and was alternately in use for one or the other of these purposes when the city adopted the assailed ordinance directing the removal of the spur track.

Under this statement it becomes at once apparent that the court below rightly decided that the contract right asserted had no existence since on the very face of the consent which was given a mere right to occupy was conveyed without any contract as to time and which therefore, taking the best view for the railroad, amounted to conferring upon it a mere license to put and use a track upon the sidewalk and therefore subject to the power of the city to revoke whenever it deemed the municipal interest required it to do so.

But the contention is that although it be conceded that the well-settled rule is that general implications may not be resorted to for the purpose of converting a grant of a municipality which is upon its face a mere license into a contract for a stated period or in perpetuity, nevertheless that rule is subject to a well-defined limitation or exception which as presented in the argument in various forms may be stated as follows: That where general powers are conferred and duties are imposed upon

a corporation which from their nature and essential character presuppose the right to exert them or the duty to perform them during a specified time or in perpetuity, and a particular power or right is conferred on the corporation which has a necessary relation thereto or an essential connection therewith, although such particular power or right may not have expressly taken the form of contract or grant for a stated time or in perpetuity, nevertheless such result may be implied by considering the essential relation which the particular power or right granted bears to the general powers and duties possessed and the necessary connection between the two for the purpose of giving a common duration to both. *Louisville* v. *Cumberland Telephone Co.*, 224 U. S. 649, 663; *Owensboro* v. *Cumberland Telephone Co.*, 230 U. S. 58, 65–66; *Boise Water Co.* v. *Boise City*, 230 U. S. 84, 91; *New York Electric Lines Co.* v. *Empire City Subway Co.*, 235 U. S. 179, 191–194.

But while the general rule is well founded and the exception or limitation by which it is asserted to be qualified is well settled, it has no relation to the case in hand, since the particular action of the city in question concerned a mere permission to exercise a facility as a license given long after the creation of the railway corporation and not inherently or in any degree necessarily controlling its power to discharge its corporate attributes. Indeed so much is this the case on the face of the situation here presented that it becomes apparent that to apply the limitation to a case like this would destroy the general rule itself.

The contention that even though this be the case, in as much as the railroad had for a long time operated the spur track on the sidewalk and used it for its general railroad purposes with the assumed knowledge and assent of the city, thereby the existence of a contractual and permanent right must be inferred, is manifestly without

merit. Indeed it amounts to saying that possession under a mere license was capable of causing that which was revocable and precarious to become contractual and permanent.

                                        *Affirmed.*