CITY OF JAMESTOWN v. PENNSYLVANIA GAS CO. et al.

(District Court, W. D. New York. February 5, 1920.)

No. 274B.

1. COURTS ⬗329—ALLEGATION REGARDING AMOUNT INVOLVED SUFFICIENT TO CONFER JURISDICTION ON FEDERAL COURT.

Allegations that the threatened injury to complainant was uncertain in amount, but aggregated over $3,000, exclusive of interest and costs, etc., *held* sufficient to confer jurisdiction on federal court, so far as the amount involved was concerned.

2. INJUNCTION ⬗59(2)—CITY MAY COMPEL GAS COMPANY TO COMPLY WITH FRANCHISE.

A municipal corporation, which had granted a gas company franchise rights in the municipality, may restrain the company from discontinuing the service upon the ground that contractual obligations would be impaired.

3. GAS ⬗6—INDETERMINATE FRANCHISE TO GAS COMPANY CREATES VESTED RIGHTS.

Even though a municipality had no inherent right to grant indeterminate franchise rights to a gas company, yet where the company accepted and acted upon the grant for some 30 years, *held*, that the grant conveyed franchise rights in fee, while the city acquired the right to enforce the furnishing of gas during the corporation's continuance in business, unless performance became impossible.

4. GAS ⬗13(3)—OBLIGATION TO FURNISH TO MUNICIPALITY NOT OBVIATED BY LACK OF REQUIREMENT IN CHARTER.

The fact that the charter of a foreign corporation did not require it to furnish gas to inhabitants of a municipality which had granted it franchise rights does not authorize the company to arbitrarily discontinue furnishing gas without showing the necessity of such discontinuance, on the theory that there is no legal objection to a foreign corporation's surrendering such franchise rights, when it is under no charter duty to fulfill its contractual obligation.

5. COURTS ⬗343—INJUNCTION ⬗114(3)—CORPORATION CONTROLLING DEFENDANT GAS COMPANY A NECESSARY PARTY DEFENDANT IN SUIT TO RESTRAIN DISCONTINUANCE OF SERVICE.

In proceedings to enjoin a gas company from discontinuing service to a municipality, which had granted it franchise rights, a corporation owning a majority of the stock in the gas company, and controlling its management, *held* a necessary party defendant, and such joinder is not prohibited by equity rule 26 (201 Fed. v, 118 C. C. A. v).

6. INJUNCTION ⬗114(3)—MINORITY STOCKHOLDERS OF DEFENDANT GAS COMPANY AND RELATED CORPORATION NOT NECESSARY PARTIES TO SUIT TO ENJOIN DISCONTINUANCE OF SERVICE.

In proceedings to enjoin a gas company from discontinuing service to a municipality, which had granted it franchise rights, minority stockhold-

ers in the gas company and another corporation, controlled by the same interests and furnishing gas to a nearby community, *held* not necessary parties.

In Equity. Bill by the City of Jamestown against the Pennsylvania Gas Company and the National Fuel Gas Company. On motion to dismiss. Motion denied, with leave to defendants to answer.

Thrasher & Clapp, of Jamestown, N. Y. (Louis L. Thrasher, of Jamestown, N. Y., of counsel), for complainant.

Mullin & Woods, of Kane, Pa. (J. E. Mullin, of Kane, Pa., of counsel), for defendant Pennsylvania Gas Co.

Dean, Edson & Jackson, of Jamestown, N. Y., for defendant National Fuel Gas · Co.

HAZEL, District Judge. In the year 1885 the trustees of the village of Jamestown, N. Y., by resolution granted the right and privilege to the defendant Pennsylvania Gas Company to lay mains, pipes, and branches for supplying natural and manufactured gas to the inhabitants of the village; nothing being stated in the resolution or grant as to the length of time during which such right was to be exercised. The said defendant, a Pennsylvania corporation, accepted such grant, and natural gas was soon thereafter continuously supplied and distributed in Jamestown to consumers for light, heat, and power in dwellings, business places, and factories; the gas being piped in interstate commerce from Warren, Pa. On August 26, 1919, notice of intention to discontinue the distribution of gas, under the terms of the agreement, on April 30, 1920, stating as a reason the shortage of gas and rapid depletion thereof, was filed with the city clerk of the city of Jamestown, which had succeeded to the rights of the village. ·

This suit in equity was thereupon brought to enjoin the defendants from cutting off its gas supply and abandoning its means for local production. The bill is lengthy, and is accompanied by Exhibit A, which constitutes the grant or right which is the subject of this controversy. The National Fuel Gas Company is joined as defendant, on the theory that it has acquired the majority of the capital stock of the grantee, and either directly or indirectly influences the abandonment of the franchise or agreement and proposed discontinuance of the supply of gas to the citizens of the complainant. It is averred that the National Fuel Gas Company is the owner of the Iroquois Natural Gas Company, which furnishes and intends to continue furnishing natural gas to the citizens of Buffalo, and that breaking off the gas service in Jamestown would be an unjust discrimination between such communities; that the defendant National Fuel Gas Company owns gas-producing fields next to those owned by the Pennsylvania Gas Company, which are held in reserve, and which are adequate for continuing the supply of gas to Jamestown under the grant in question. It is also averred that the Pennsylvania Gas Company has an adequate supply of natural gas for delivery. Diversity of citizenship and irreparable injury in excess of $3,000 and costs is set forth.

By their motion to dismiss the defendants challenge the validity of the bill because of want of equity, the jurisdiction of this court, and

contend a misjoinder and nonjoinder of parties. The peculiar nature of the relief sought herein and the subject-matter generally present questions of great importance, and I shall first pass upon the contention that this court is without power and authority to entertain the bill.

[1, 2] 1. The orator, true enough, must affirmatively show an amount in controversy exceeding, exclusive of interest and costs, the sum of $3,000. The averment that irreparable injury to the complainant and its inhabitants by the abrogation of the grant or right, though admittedly "uncertain in amount, aggregates more than $3,000, exclusive of interest and costs," is believed sufficient, even though the complainant itself was not a consumer of gas, or a person directly deprived of any service or property, since a contractual obligation existed by which the grantor of the franchise obtained the right to lay pipes through the streets and furnish gas to the residents of the village. To improperly discontinue such service is believed to be an impairment of valuable contractual rights and privileges which are enforceable by the municipality. Such, I think, is the holding in Russell v. Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282. The pecuniary amount involved no doubt was the value of the right sought to be protected, and must be capable of ascertainment. The averment that the damage "would be uncertain in extent and amount, and not accurately ascertainable," implies, I think, the value of the right to be protected by the injunction, and that the amount of the injury prevented is susceptible of estimation in money. Bitterman v. Louisville & N. R. R., 207 U. S. 205, 28 Sup. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Hunt v. N. Y. Cotton Exchange, 205 U. S. 322, 27 Sup. Ct. 529, 51 L. Ed. 821. There are a number of citations in the briefs for defendants substantially holding that where the damage cannot be measured—when it is contingent—jurisdiction should not be taken; but such cases are not strictly applicable to a case where a municipality sues to enforce franchise rights and prevent threatened waste or injury of a valuable right by injunction. German Alliance Insurance Co. v. Home Water Co., 226 U. S. 220, 33 Sup. Ct. 32, 57 L. Ed. 195, 42 L. R. A. (N. S.) 1000; International Railway Co. v. Rann, 224 N. Y. 83, 120 N. E. 153.

2. In the latter case it was said, inter alia, that an agreement conferring rights upon a city constituted the city the real party to the agreement, and, though the inhabitants were not parties thereto, they nevertheless were entitled to the benefits while the agreement remained in force.

[3] 3. It is true no legislative act expressly conferring the right to make the grant or agreement in question was enacted; but, even assuming that the village trustees had no inherent right to execute the franchise, the Pennsylvania Gas Company nevertheless accepted the agreement or grant, and not only acted upon it, but continued faithfully for 30 years to carry out its objects and purposes. Under such circumstances neither the effect of the agreement nor the defendants' possession of the property rights under color of right can safely be denied. Farnsworth v. Boro Oil & Gas Co., 216 N. Y. 40, 109 N. E. 860. Such vested rights are binding on both parties, and cannot be reduced

to a mere revocable license or permission, since they were secured without any depending conditions or reservations. An individual, it is true, could decline to avail himself of the use of the gas, or stop using it; but the municipality could not arbitrarily deprive the company of its right to use the streets and highways for performing the service of distributing natural and manufactured gas to its customers. This is so, even though no duration of time or limitation of use was fixed in the grant or privilege, since an omission to do so does not imply a right of stoppage by the gas company while gas is available to it for fulfilling its obligations. Pennsylvania Gas Co. v. Public Service Commission et al., 225 N. Y. 397, 122 N. E. 260; Louisville v. Cumberland Telegraph & Telephone Co., 224 U. S. 649, 32 Sup. Ct. 572, 56 L. Ed. 934.

Defendant attaches importance to Seaboard Air Line Railway v. City of Raleigh, 242 U. S. 15, 37 Sup. Ct. 8, 61 L. Ed. 121; but in that case I think a different principle was applied. There the permission to use and occupy granted by the board of aldermen related to a spur track on a sidewalk, and the Supreme Court said the circumstances disclosed a mere license to exercise the facility without the necessity of discharging any corporate function. In this case, however, the very nature of the grant or privilege, together with the peculiar civic purpose attained thereby, "presuppose the right to exert the essential characteristics or the duty to perform them during a specified time or in perpetuity." The rule that general implication may not be available to convert a license or permissive right thus obtained into a contract in perpetuity, true enough, has its limitations and exceptions. The grant in perpetuity may, quoting from the City of Raleigh Case, "be implied by considering the essential relation which the particular power or right granted bears to the general powers and duties possessed and the necessary connection between the two for the purpose of giving a common duration to both." The essential relations in the case at bar were such that in my opinion the grant conveyed franchise rights in fee, while the city in turn acquired the right to enforce the furnishing of natural gas to its inhabitants so long as the corporation carries on the business for which it was organized, and so long as it is not impossible for it to perform the service.

[4] 4. It is next urged that the Pennsylvania Gas Company is not obliged by its charter to furnish gas to Jamestown; that it did not come into existence to discharge such a duty as a corporate attribute, and even conceding that the franchise rights granted herein are not terminable at will, there nevertheless is no legal objection to a foreign corporation surrendering such franchise rights, when it is under no charter duty to fulfill its contractual obligation. But any statutory right of relinquishment would no doubt be based upon specific procedure or satisfactory showing of a necessity—a procedure with which we are not concerned herein. Of course, if the intended relinquishment of the grant is in good faith, because, for example, of insufficient natural gas or its inability to longer produce the same, and without resorting unfairly to preferential localities for the sale and conveyance of its product, a different question would be presented for decision. It is not

claimed that the bill is open to the inference that the defendant withdraws from the franchise because it intends to cease business, or surrender its franchise, or to stop supplying gas to all of its customers. On the contrary, the bill states that an intention existed to divert the natural gas of the Pennsylvania Gas Company to other localities.

It is true that in East Ohio Gas Co. v. Akron, 81 Ohio St. 33, 90 N. E. 40, 26 L. R. A. (N. S.) 92, 18 Ann. Cas. 332, it was held that a franchise to a gas company which was indefinite as to duration of the grant was revocable by either party and continued only at the will of both; but in a later case—Northern Ohio Traction & Light Co. v. Ohio, 245 U. S. 574, 38 Sup. Ct. 196, 62 L. Ed. 481, L. R. A. 1918E, 865—the Supreme Court disagreed with that decision, and held that where there are no controlling provisions in the state Constitution or statutes, and no prior decision by its courts to the contrary, a franchise granted by the state authorities, without limit as to duration and without apparent intention to accept a mere revocable right, is such a contract as cannot be annulled at the will of the granting authority. So, also, in Owensboro v. Cumberland Telephone & Telegraph Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389, where it was held that an ordinance of a municipality conferring a right to use the streets for telephone poles and wires is not a revocable license, but a grant in perpetuity, unless limited as to time. See, also, New York Electric Lines Co. v. Empire Subway Co., 235 U. S. 179, 35 Sup. Ct. 72, 59 L. Ed. 184, L. R. A. 1918E, 874, Ann. Cas. 1915A, 906; Russell v. Sebastian, 233 U. S. 195, 34 Sup. Ct. 517, 58 L. Ed. 912, L. R. A. 1918E, 882, Ann. Cas. 1914C, 1282. It is not contended that the grant violated, at its inception or even now, the state Constitution or statutes. Indeed, none of the adjudications in this state, as I interpret them, treating of analogous situations, regard such a grant as here considered as a mere license or permission, terminable at will by either party, but as a property right which cannot arbitrarily be destroyed, and contemplates, as to duration, the exercise of the granted rights in perpetuity.

[5, 6] 5. The National Fuel Gas Company controls and manages the business affairs and policies of the Pennsylvania Gas Company through its stock holding, and hence it is believed to be a necessary party defendant. Its control over the Iroquois Natural Gas Company of Buffalo, which presumably obtains its supply of natural gas from the same fields as the Pennsylvania Gas Company, or from fields adjacent thereto, is a recital of a fact, from which an inference is drawn that it is not intended to discontinue the business of supplying gas, but merely to discontinue at Jamestown, so as to favor another locality. It is thought that in this case we are concerned with a common joint litigation, and that the bill is not objectionable for multifariousness. The complainant, to succeed upon its theory, is required to prove the wrongful acts of the National Fuel Gas Company in order to obtain its full measure of relief, and to obtain the relief demanded it is not believed an indispensable party, even though such defendant is not interested in all the matters contained in the bill. It is enough if the National Fuel Gas Company has an interest in some essential matter involved in the suit which is connected with the others. Jones v. Missouri, 144

Fed. 765, 75 C. C. A. 631; Jaynes v. Goepper, 147 Mass. 309, 17 N. E. 831. Nor does equity rule 26 (201 Fed. v, 118 C. C. A. v) forbid joining the defendants, since sufficient grounds appear for doing so. Neither the Iroquois Natural Gas Company nor the minority stockholders were necessary parties. No relief is asked as against them, and they are not likely to be affected by the decree of this court. Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499.

On the hearing of this motion it was suggested by counsel for the defendants that the natural gas supply of Jamestown was insufficient, and hence the intended discontinuance was on that ground alone. To this complainant rejoined that the grant was for both natural and manufactured gas; but we are not now concerned with any such questions, since the complaint is based on the threatened cessation of available natural gas for complying with the grant.

The motion to dismiss is denied on all grounds, with leave to defendants to answer.