**BLUSAL MEATS, INC.,**
**Plaintiff-Counterclaim**
**Defendant,**

v.

**UNITED STATES of America and United States Department of Agriculture, Defendants-Counterclaim Plaintiffs.**

**UNITED STATES of America, Plaintiff,**

v.

**Shelton BLUMHOF and Howard Saltiel, Defendants.**

**UNITED STATES of America, Plaintiff,**

v.

**BLUSAL MEATS, INC., Defendant.**

Nos. 84 Civ. 0497(LLS), 84 Civ. 9067(LLS) and 85 Civ. 0238(LLS).

United States District Court,
S.D. New York.

June 24, 1986.

Rudolph Giuliani, U.S. Atty., S.D.N.Y., New York City, for U.S. of America and U.S. Dept. of Agriculture; Stephen A. Dvorkin, Asst. U.S. Atty., Russell B. Kinner, Commercial Litigation Branch, U.S. Dept. of Justice, of counsel.

Salon, Marrow & Dykman, New York City, for Blusal Meats, Inc., Shelton Blumhof and Howard Saltiel; Robert V. Marrow, Nadienne Vincent, of counsel.

## OPINION and ORDER

STANTON, District Judge.

In January, 1976 Shelton Blumhof and Howard Saltiel formed Blusal Meats, Inc. ("Blusal"), which sold meat wholesale to food stores. During 1976 to 1978 the United States Department of Agriculture conducted an investigation concerning suspected violations of food stamp program regulations by Blusal and its principals. As a result of that investigation Blusal, Saltiel, Blumhof and a third individual were indicted in the Southern District of New York in May, 1979.

The indictment charged them with conspiracy and violation of the Food Stamp Act, 7 U.S.C. § 2011 *et seq.*, and other federal criminal statutes. In June, 1979 Blusal, Saltiel and Blumhof pleaded guilty to certain counts of the indictment. Blusal was fined $5,000, Saltiel was sentenced to six months imprisonment, and Blumhof was sentenced to six months imprisonment, a $10,000 fine, and three years of probation.

In May, 1980 the Department of Agriculture began an administrative proceeding to recover sums Blusal allegedly obtained through improper food stamp transactions. In March, 1983 the Department of Agriculture ruled that Blusal had made false claims totalling $2,535,000 under the food stamp program.

The motions before the court involve three related cases. The first ("Action I") was brought by Blusal in the Supreme Court of the State of New York, Bronx County, in November, 1983 against the United States and the United States Department of Agriculture ("the government"), alleging that the administrative proceeding which resulted in the $2,535,000 claim against Blusal violated its rights under the United States and New York constitutions. The government removed the case to this court and counterclaimed under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, alleging that during 1976 to 1978 Blusal accepted and redeemed stolen

food stamps. In July, 1984 Blusal's claim was dismissed on consent.

The second action ("Action II") was brought by the United States in this court in December, 1984 against Saltiel and Blumhof under the FCA, alleging that during 1976 to 1978 they improperly accepted and redeemed food stamps in their capacity as officers of Blusal.[1]

The third action ("Action III") was brought by the United States in this court in January, 1985 charging Blusal with breaching its contract with the United States Department of Agriculture, under which Blusal was authorized to participate in the food stamp program, and with unjust enrichment.

In Action I Blusal moves pursuant to Fed.R.Civ.P. 12(b)(6) for dismissal of the government's counterclaim, and pursuant to Fed.R.Civ.P. 56(b) for partial summary judgment on the counterclaim. In Action II Saltiel moves pursuant to Rule 12(b)(6) for dismissal and pursuant to Rule 56(b) for partial summary judgment. In Action III Blusal moves pursuant to Rule 12(b)(6) for dismissal, and Blusal and the United States cross move pursuant to Rule 56 for summary judgment.

### Action I

Blusal's motion for dismissal of the government's counterclaim is granted in part.

■ The government alleges that Blusal, through the actions of its officers and employees, violated the FCA, §§ 3729(1)–(3), by knowingly accepting, acquiring, possessing and presenting for redemption stolen food stamps, and by knowingly making and using false records and statements to obtain the payment of false claims.[2] (Answer and Counterclaim I, ¶¶ 8–13.) Those allegations are sufficient to state claims under §§ 3729(1) and (2).

■ The elements of a claim under § 3729(1) are: (1) that the defendant presented or caused to be presented to an agent of the United States a claim for payment or approval; (2) that the claim was false or fraudulent; (3) that the defendant knew the claim was false or fraudulent; and (4) that the United States suffered damages as a result of the false or fraudulent claim. The elements of a claim under § 3729(2) are similar: (1) that the defendant made or used, or caused to be made or used, a record or statement to get a claim against the United States paid or approved; (2) that the record or statement and the claim it supported were both false or fraudulent; (3) that the defendant knew the record or statement and the claim it supported were false or fraudulent; and (4) that the United States suffered damages as a result of the false or fraudulent claim. *See United States ex rel. Fahner v. Alaska,* 591 F.Supp. 794, 798 (N.D.Ill.1984); *United States v. Lawson,* 522 F.Supp. 746, 750 (D.N.J.1981); *United States v. Klein,* 230 F.Supp. 426, 433 (W.D.Pa.1964), *aff'd mem.,* 356 F.2d 983 (3rd Cir.1966). Under both sections the United States may recover costs and a $2,000 civil penalty for each FCA violation in the absence of proof of damage to the United States. *United States v. Silver,* 384 F.Supp. 617, 620 (E.D. N.Y.1974), *aff'd mem.,* 515 F.2d 505 (2d Cir.1975).

---

1. Shelton Blumhof has never answered the complaint in Action II and is in default. (Blusal's Memorandum of Law at 7; Government's Memorandum of Law at 2 n. *.)

2. Section 3729 provides, in relevant part:
   A person not a member of an armed force of the United States is liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action, if the person—
   (1) knowingly presents, or causes to be presented, to an officer or employee of the Government or a member of an armed force a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved; [or] (3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; ....

■ The government's allegations in its counterclaim are not sufficient, however, to state a claim under § 3729(3). The elements of such a claim are: (1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States; (2) that one or more conspirators performed any act to effect the object of the conspiracy; and (3) that the United States suffered damages as a result of the false or fraudulent claim. *See Hageny v. United States*, 570 F.2d 924, 934, 215 Ct.Cl. 412 (1978); *Murray & Sorenson, Inc. v. United States*, 207 F.2d 119, 123 (1st Cir.1953); *United States v. Cripps*, 460 F.Supp. 969, 975 (E.D.Mich.1978); *United States v. Kates*, 419 F.Supp. 846, 851–852 (E.D.Pa. 1976); *cf. United States v. Plotke*, 725 F.2d 1303, 1307 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 151, 83 L.Ed.2d 89 (1984) (criminal conspiracy under 18 U.S.C. § 371 consists of agreement to commit crime and commission of an overt act in furtherance of the conspiracy). Proof that a false claim was actually presented to or paid by the government as a result of the conspiracy is not necessary for a defendant to be held liable for the civil penalty and costs under § 3729(3) for each conspiracy proven. *United States v. Krietemeyer*, 506 F.Supp. 289, 292 (S.D.Ill.1980); *United States v. Cripps*, 451 F.Supp. 598, 601 (E.D.Mich. 1978); *Kates*, 419 F.Supp. at 852; *United States v. Ben Grunstein & Sons Co.*, 127 F.Supp. 907, 912 (D.N.J.1955).

■ An agreement among two or more persons to commit a crime is the essence of conspiracy. *United States v. Martino*, 664 F.2d 860, 876 (2d Cir.1981), *cert. denied,* 458 U.S. 1110, 102 S.Ct. 3493, 73 L.Ed.2d 1373 (1982). Since the government's counterclaim does not allege the existence of any agreement to get a false claim allowed or paid, its claim under § 3729(3) must be dismissed.

Blusal's motion for partial summary judgment on the statute of limitations is also granted. Blusal argues that since the government's counterclaim was filed on February 17, 1984, under the FCA six-year statute of limitations, 31 U.S.C. § 3731(b), the counterclaim must be dismissed with respect to any FCA violations which took place before February 17, 1978. The government contends that its counterclaim arises out of the same transactions which underlie Blusal's complaint, and so relates back to November 28, 1983, the date the complaint was filed, for statute of limitations purposes.

■ The government's counterclaim does not relate back to Blusal's complaint. Even assuming that the counterclaim arises out of the same transactions which were the basis of Blusal's claims, a generous assumption since Blusal's complaint primarily challenges the procedure followed in the administrative hearing rather than its outcome, it has been uniformly held that the FCA six-year limitations period is not tolled by the claimant's institution of a suit against the United States related to the false claims. *See e.g., Erie Basin Metal Products, Inc. v. United States*, 150 F.Supp. 561, 564–565, 138 Ct.Cl. 67 (1957); *Canned Foods, Inc. v. United States*, 146 F.Supp. 470, 472, 135 Ct.Cl. 862 (1956); *see also United States v. Borin*, 209 F.2d 145, 147–148 (5th Cir.), *cert. denied,* 348 U.S. 821, 75 S.Ct. 33, 99 L.Ed 647 (1954) (FCA limitations period jurisdictional and may not be tolled); *United States v. Dawes*, 151 F.2d 639, 643 (7th Cir.1945), *cert. denied,* 327 U.S. 788, 66 S.Ct. 808, 90 L.Ed.2d 1015 (1946) (same); *Klein*, 230 F.Supp. at 441 (same); *United States v. MacEvoy*, 10 F.R.D. 323, 325 (D.N.J.1950) (same).

The cases cited by the defendants are inapposite. In *E.W. Bliss Co. v. Cold Metal Process Co.*, 156 F.Supp. 63 (N.D.Ohio 1957), *aff'd in part and rev'd in part on other grounds*, 285 F.2d 231 (6th Cir.1960), the counterclaim was not made under the FCA, and the court applied Ohio law on the relation back of the counterclaim. In *United States v. Capital Transit Co.*, 108 F.Supp. 348 (D.D.C.1952), the court held that when the United States brings a tort action more than two years after the accident which forms the basis of its suit, the defendant's counterclaim based on the

same accident would not be barred by the two-year limitations period in the Federal Tort Claims Act. The court's decision rested on the liberal construction customarily applied to the Tort Claims Act, and on an equitably implied waiver by the government of its right to assert a limitations defense when it sues more than two years after both parties' actions accrued. *Id.* at 349–350; *see also United States v. Southern Pacific Co.*, 210 F.Supp. 760 (N.D.Cal. 1962). By contrast in this case, where it was the government which acted first in 1980 by bringing its administrative proceeding, it is not unfair to apply the strictly enforced FCA limitations period to the government's counterclaims brought in 1984.

 ■ Since the government's counterclaim does not relate back, Blusal is entitled to partial summary judgment in Action I. The six-year limitations period under the FCA begins to run on the date the claim is made or, if the claim is paid, on the date of the payment. *Jankowitz v. United States*, 533 F.2d 538, 545, 209 Ct.Cl. 489 (1976); *Cripps*, 451 F.Supp. at 600; *Klein*, 230 F.Supp. at 441. Accordingly, the government's counterclaim is dismissed with respect to those claims based upon food stamp redemption payments made to Blusal before February 17, 1978, and, if payment was not made, food stamp redemption claims presented by Blusal before February 17, 1978.

### Action II

Saltiel's motion to dismiss the government's complaint in Action II in its entirety is denied. The three causes of action pleaded track the statutory language and include allegations of all the elements of claims under the FCA, § 3729(1)–(3).

The government's complaint in Action II was filed on December 17, 1984. The second cause of action alleges that between April, 1976 and December, 1978 Saltiel and Blumhof violated the FCA, § 3729(1), by causing ineligible food stamps to be presented to the United States for redemption. (Complaint II, ¶ 20.) The third cause

of action alleges that between April, 1976 and December, 1978 the same defendants violated the FCA, § 3729(2), by causing false statements to be made by others in order to redeem ineligible food stamps. (Complaint II, ¶ 22.)

For the reasons set forth above with respect to Action I, Saltiel's motion for partial summary judgment on the statute of limitations with respect to the second and third causes of action asserted against him in Action II is granted. Those actions are dismissed with respect to claims based upon food stamp redemption payments made to Blusal before December 17, 1978, and, if payment was not made, food stamp redemption claims presented by Blusal before December 17, 1978.

Saltiel is also entitled to partial summary judgment on the first cause of action in Action II. In that count the government alleges that during 1976 to 1978 Saltiel and Blumhof violated the FCA, § 3729(3), by conspiring together and with others to defraud the United States by getting false claims allowed or paid. (Complaint II, ¶ 13.) The government argues that in applying the FCA statute of limitations in § 3731(b) to violations of the FCA conspiracy provision, the "last overt act" rule should apply. That rule is applied to the federal five-year criminal statute of limitations, 18 U.S.C. § 3282, and provides that a defendant may be punished for participating even earlier in a conspiracy so long as one overt act in furtherance of the conspiracy occurred within five years of the filing of the indictment. *See Grunewald v. United States*, 353 U.S. 391, 397, 77 S.Ct. 963, 970, 1 L.Ed.2d 931 (1957); *United States v. Mennuti*, 679 F.2d 1032, 1035 (2d Cir.1982).

 ■ However, the last overt act rule is not applicable to actions for civil conspiracy. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 549–551, 63 S.Ct. 379, 386–388, 87 L.Ed. 443 (1943) (claim for civil penalty under FCA is civil, not criminal in nature). Under § 3729(3) the act which begins the running of the limitations period is the formation of the conspiracy. The

fact that acts in furtherance of the conspiracy alleged in this case may have occurred within six years of the government's suit does not alter the application of the limitations period to the 3729(3) claim. The principle is well settled in this circuit that the occurrence of an act in furtherance of a civil conspiracy within the limitations period does not render every related but otherwise time barred conspiratorial act actionable. *See Singleton v. City of New York,* 632 F.2d 185, 192 (2d Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); *Rutkin v. Reinfeld,* 229 F.2d 248, 252 (2d Cir.1956); *Rodrigues v. Village of Larchmont, New York,* 608 F.Supp. 467, 477 n. 11 (S.D.N.Y.1985); *Chodos v. Federal Bureau of Investigation,* 559 F.Supp. 69, 74 (S.D.N.Y.), *aff'd mem.,* 697 F.2d 289 (2d Cir.1982), *cert. denied,* 459 U.S. 1111, 103 S.Ct. 741, 74 L.Ed.2d 962 (1983); *Lowell Wiper Supply Co. v. Helen Shop, Inc.,* 235 F.Supp. 640, 644 (S.D.N.Y. 1964); *Skouras Theatres Corp. v. Radio-Keith-Orpheum Corp.,* 193 F.Supp. 401, 405 (S.D.N.Y.1961); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971); *Cripps,* 451 F.Supp. at 601 (declining to apply last overt act rule in action by government under § 3729(3)).

Since the last overt act rule is not applicable to this civil conspiracy action under § 3729(3), the government's claims based upon the formation of conspiracies more than six years before its complaint was filed are time barred. Accordingly, Saltiel's motion for partial summary judgment is granted, and the government's action against Saltiel in Action II under § 3729(3) is dismissed with respect to those claims based upon conspiracies that were formed before December 17, 1978. *See Cripps,* 460 F.Supp. at 976 (defendant liable for one civil penalty for each separate conspiracy under § 3729(3)).

### Action III

■ Blusal was authorized during 1976 to 1978 to participate as a wholesale food concern in the federal Food Stamp Program ("FSP"), 7 U.S.C. § 2011 *et. seq.* In the first and second causes of action in Action III the government alleges that Blusal's authorization under the FSP constituted a contract between it and Blusal, the terms of which were set by the FSP regulations, and that Blusal's alleged improper acceptance and redemption of food stamps breached that contract. (Complaint III, ¶¶ 15–25.) In the third and final cause of action in Action III the government alleges that Blusal was unjustly enriched by its improper acceptance and redemption of food stamps. (Complaint III, ¶ 27.) Since the authorization of a wholesale food concern to participate in the FSP does not create a contractual relation between that concern and the government, Blusal's motion to dismiss the government's contract claims is granted.

The FSP provides assistance to eligible low income households by enabling them "to obtain a more nutritious diet through normal channels of trade by increasing [their] food purchasing power ...." 7 U.S.C. § 2011. The assistance is provided by stamps, issued by the Department of Agriculture, with which recipients may purchase eligible food items from retail food stores authorized to participate in the FSP. 7 U.S.C. § 2013(a). The FSP is administered by the Food and Nutrition Service ("FNS") of the Department of Agriculture. 7 C.F.R. § 217.3. Upon its application to the FNS, a food wholesaler may be authorized to accept food stamps from specified customers if, *inter alia,* the FNS determines that the wholesaler is needed as a redemption outlet for the wholesaler's specified customers, who may include "one or more specified authorized food stores which are without access to an insured financial institution which will redeem their coupons." 7 U.S.C. § 2018; 7 C.F.R. § 278.1(c). The FNS may unilaterally "withdraw the authorization of any firm authorized to participate in the [FSP] if it determines that the firm's continued participation will not further the purposes of the program," including, in the case of wholesale food concerns, if its service as a redemption center for retail stores or other food distribution outlets is no longer re-

quired. 7 C.F.R. § 278.1(k). *Cf. Webb v. Bergland,* 621 F.2d 594 (3d Cir.1980) (withdrawal of wholesale food outlet's authorization to participate in FSP approved where FNS properly found that company no longer served the purpose of the program); *Kentucky Fried Chicken of Cleveland, Inc. v. United States,* 449 F.2d 255 (5th Cir.1971) (upholding denial of plaintiff's application to participate in FSP where that participation would not effectuate the purpose of FSP); *Capricorn Coffees, Inc. v. Butz,* 432 F.Supp. 917 (N.D. Cal.1977) (withdrawing authorization to participate in FSP where plaintiff's sales of luxury items would not further purpose of FSP).

Given the broad discretion in the FNS to refuse or revoke FSP authorization, in some cases for reasons beyond the control of the particular applicant or participant, Blusal's authorization to participate in the FSP was in the nature of a license, and as such it did not create a contract between Blusal and the United States. *See Seaboard Air Line Railway v. City of Raleigh,* 242 U.S. 15, 37 S.Ct. 8, 61 L.Ed. 121 (1916); *Kennedy v. Hughes,* 596 F.Supp. 1487, 1495 (D.Del.1984); *Palmetto Fire Ins. Co. v. Beha,* 13 F.2d 500, 505 (2nd Cir.1925). Therefore, while Blusal's authority to participate in the FSP depended upon its compliance with FNS regulations, its alleged failure to so comply did not subject it to an action for breach of contract. Accordingly, the government's claims against Blusal for breach of contract are dismissed.

In its third cause of action the government alleges that Blusal was unjustly enriched to the detriment of the United States by Blusal's redemption, between April, 1976 and December, 1978, of food stamps which were either stolen or received from unauthorized sources, in violation of FSP regulations. (Complaint III, ¶¶ 16, 22, 27.) Blusal moves for summary judgment on the third cause of action, arguing that it is barred by the statute of limitations.

■ The various limitations periods applicable to common law claims asserted by the United States are set forth in 28 U.S.C. § 2415. The statute provides that actions "founded upon any contract express or implied in law or fact" must, with certain exceptions, be brought within six years of the date the right of action accrued, 28 U.S.C. § 2415(a); and that actions in tort must, with certain exceptions, be brought within three years of the date the right of action accrued, 28 U.S.C. § 2415(b). When the United States sues for damages, the substance of the claim must be characterized as sounding in contract, quasi-contract or tort, for the purposes of applying § 2415. *United States v. Limbs,* 524 F.2d 799, 801 (9th Cir.1975); *United States v. Neidorf,* 522 F.2d 916, 919 (9th Cir.1975); *see also Stanat Manufacturing Co., Inc. v. Imperial Metal Finishing Co., Inc.,* 325 F.Supp. 794, 796 (E.D.N.Y.1971) ("[W]here a statute distinguishes between tort and contract theories and substantial consequences flow from characterization of a case as one or the other, the courts have no right to treat the terms interchangeably.").

The substance of a claim is the proper basis for determining the appropriate statute of limitations. Here, although the government styles its claim as one for "unjust enrichment," a claim which would be subject to the six-year limitations period under § 2415(a), *Limbs,* 524 F.2d at 801, its substance is that of an action for fraud.

■ A critical difference is that in fraud actions one must prove defendant's culpability. To prevail on a claim for unjust enrichment the plaintiff need only show that the defendant was enriched at plaintiff's expense, and that the circumstances were such that in equity and good conscience the defendant should return the money to the plaintiff. *Reprosystem, B.V. v. SCM Corp.,* 727 F.2d 257, 263 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 110, 83 L.Ed.2d 54 (1984); *Songbird Jet Ltd., Inc. v. Amax, Inc.,* 581 F.Supp. 912, 926 (S.D.N.Y.1984). Proof of wrongful conduct by the defendant is not required. *Simonds v. Simonds,* 45 N.Y.2d 233, 408 N.Y.S.2d 359, 364, 380 N.E.2d 189, 194 (Ct.App.1978); *Tordai v. Tordai,* 109 A.D.2d 996, 486 N.Y.

S.2d 802, 804 (1984). Thus, as Judge Sand pointed out in *United States v. Vicon Construction Co., Inc.*, 575 F.Supp. 1578, 1579 (S.D.N.Y.1983), "the vast majority of unjust enrichment cases involve either defendants who have received 'double recoveries' or those who have unquestionably benefitted through the uncompensated labors of others."

■■■ By contrast, in an action for fraud the plaintiff must prove that the defendant misrepresented a fact, knowing that his representation was false and intending that another rely upon it, and that the other party justifiably did so rely to his injury. *Mallis v. Bankers Trust Co.*, 615 F.2d 68, 80 (2d Cir.1980), *cert. denied*, 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); *Clearview Concrete Products Corp. v. S. Charles Gherardi, Inc.*, 88 A.D.2d 461, 453 N.Y.S.2d 750, 754–755 (1982). Here the factual basis for the government's claims is that defendant knowingly and purposefully presented false documents to obtain money. That is a tort, and suit must be brought upon it within three years. 28 U.S.C. § 2415(b). The three-year limitation is not to be changed to a six-year limitation by calling the suit one for "unjust enrichment." *See Vicon*, 575 F.Supp. at 1580–1581; S.Rep. No. 1328, 89 Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Ad.News 2502, 2504 ("[T]ort actions, that is, actions based on damage or injury from a wrongful or negligent act, must be brought by the United States within three years after the right of action first accrues.") A different conclusion would, in practical terms, in many cases annul the three-year tort limitations period.

A tort cause of action accrues when the claim could have been sued upon. *Limbs*, 524 F.2d at 802; *Vicon*, 575 F.Supp. at 1581. The government acknowledges that it knew of Blusal's alleged improper redemption of food stamps, at the very latest, in October, 1979. (Government's Memorandum of Law at 22–23.) Since the government's complaint was not filed until January 9, 1985, its third cause of action for fraud is time barred under § 2415(b).

Accordingly Blusal's motion for summary judgment in Action III is also granted as to the government's claim in the third cause of action.

### Conclusion

Blusal's motion to dismiss in Action I is granted as to the government's claim under FCA § 3729(3). Blusal's motion for partial summary judgment in Action I is granted as to the government's claims under FCA §§ 3729(1) and (2): those claims based upon food stamp redemption payments made to Blusal before February 17, 1978, and, if payment was not made by the United States, food stamp redemption claims presented by Blusal before February 17, 1978, are dismissed.

Saltiel's motion for partial summary judgment in Action II is granted as to the government's claims under FCA §§ 3729(1) and (2): those claims based upon food stamp redemption payments made to Blusal before December 17, 1978, and, if payment was not made by the United States, food stamp redemption claims presented by Blusal before December 17, 1978, are dismissed. Saltiel's motion for partial summary judgment in Action II is granted as to the government's claims under FCA § 3729(3): those claims based upon the alleged joinder in a conspiracy before December 17, 1978, are dismissed.

The government's motion for summary judgment in Action III is denied. Blusal's motion for summary judgment in Action III is granted, and that action is dismissed in its entirety.

So ordered.