For amended opinion filed October 22, 1999, see 1999 WL 961784.

UNITED STATES of America, ex rel. Janet C. OLIVER, Plaintiff–Appellant,

v.

The PARSONS COMPANY; Parsons Engineering Science, Inc.; Parsons Environmental Services, Inc.; Ralph M. Parsons Company, Defendants–Appellees.

No. 97–56452.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 10, 1999.

Filed July 19, 1999.

---

Dean Francis Pace, Pace and Rose, Los Angeles, California, for the plaintiff-appellant.

Dale H. Oliver, Quinn Emanuel Urquhart Oliver & Hedges, Los Angeles, California, for the defendants-appellees.

Before: D. W. NELSON, REINHARDT, and TROTT, Circuit Judges.

TROTT, Circuit Judge:

Janet C. Oliver, plaintiff qui tam, appeals the district court's denial of her motion for summary judgment and its grant of summary judgment in favor of defen-

dants The Parsons Company, Parsons Engineering Science, Inc., Parsons Environmental Services, Inc., and Ralph M. Parsons Company (collectively, "Parsons"). The district court held that Parsons' cost accounting practices did not give rise to a claim under the False Claims Act, 31 U.S.C. § 3729 (West 1999) ("the Act") because Parsons employed a "reasonable interpretation" of the applicable regulations and because the facts alleged failed to meet the scienter requirement.

This court has jurisdiction under 28 U.S.C. § 1291. We hold that the district court erred in applying a "reasonable interpretation" approach to determining falsity under the Act and that genuine issues of material fact exist regarding whether Parsons "knowingly" submitted a false claim. We therefore REVERSE and REMAND for further proceedings in accordance with this opinion.

# I

## FACTS

Oliver was an accountant for The Parsons Company ("TPC"). She now sues on behalf of the United States, claiming that Parsons knowingly violated the federal Cost Accounting Standards in an effort to overcharge the government, thereby giving rise to a claim under the Act.

Parsons Engineering Science, Inc. ("Parsons ES") is the predecessor of Engineering Science, Inc. ("ES") and is a subsidiary of TPC. Parsons ES is a significant federal government contractor, with contracts amounting to over $300 million between 1989 and 1996.

In August 1989, Parsons ES was awarded a $58,115,836 contract by the State of California Bureau of Automotive Repairs to operate part of the state's air quality emissions program ("the BAR contract"). In January 1990, Parsons ES awarded a subcontract to Inspection and Maintenance Corporation ("I & M"), another wholly-owned subsidiary of TPC, to perform the "field and supervisory work" associated with the BAR contract. I & M's only

corporate objective is the BAR contract; it performs no work for the federal government and has continued to perform under the BAR contract even after the written subcontract with Parsons ES expired on December 31, 1991.

I & M consists solely of employees who directly implement the BAR contract. It is, as the district court put it, "in essence, only a payroll." For accounting purposes, I & M labor costs were not included in Parsons ES's direct labor base cost but were instead characterized as "other direct costs" arising from the subcontract. This practice affects the overhead rate charged to the federal government by Parsons ES in its federal contracts because the overhead rate is calculated as a percentage of the difference between the direct labor base and the "overhead pool costs." For example, if Parsons ES's direct labor base cost is $100 and the overhead pool money amounted to $150, the overhead rate is 150%. If its direct labor base cost was increased to $150, then the overhead rate charged to the government is 100%. In this way, Oliver alleges that Parsons ES used I & M to reduce its direct labor costs, thereby increasing the overhead rate billed to the federal government.

Oliver filed this qui tam action under seal on August 14, 1995, notified the government, and disclosed to the government all her evidence of fraud. On November 7, 1996, the government issued a letter declining to intervene in the litigation. The complaint was then unsealed, and Oliver began pursuing the action as relator. The parties filed a joint statement of stipulated facts on June 2, 1997. Both parties moved for summary judgment. On July 31, 1997, the district court entered summary judgment for Parsons, and Oliver now appeals.

# II

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). We must

**1104**

determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. *Abdul–Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir.1996).

## III

## FALSE CLAIMS ACT

■ The Act prohibits any person from knowingly presenting a false or fraudulent claim for payment or approval by the federal government. 31 U.S.C. § 3729(a)(1) (West 1999). A prima facie Cost Accounting Standards case under the Act therefore requires proof that: (1) the defendant made a claim against the United States; (2) the claim was false or fraudulent; and (3) that the defendant knew the claim was false or fraudulent. *Id.; see also Blusal Meats, Inc. v. United States*, 638 F.Supp. 824, 827 (S.D.N.Y.1986). The parties agree that Parsons made a claim against the United States. We therefore limit our review to the issues of falsity and knowledge.

## A

### False or Fraudulent Nature of the Claim

Oliver argues that the district court erred in determining that the claims were not false. Specifically, Oliver argues that: (1) the district court failed to consider certain evidence; (2) the subcontract between Parsons ES and I & M was unlawful; and (3) Parsons' accounting practices did not comply with the federal requirements.

**1.**

■ Oliver's first argument is that the district court erred in ignoring the opinion of her expert, Peter Elliot, CPA. However, in making this argument, Oliver does nothing more than reiterate Elliot's testimony, which offers an opinion regarding the legality of Parsons' accounting practices. Because Parsons' accounting practices are undisputed and the only question is whether the practices are legal, the district court was not required to accept Elliot's opinion. *See Colacurcio v. City of Kent*, 163 F.3d 545, 549 (9th Cir.1998) ("When a mixed question of fact and law involves undisputed underlying facts, summary judgment may be appropriate.")

**2.**

■ Oliver next argues that the claims are false because the contractual relationship between Parsons ES and I & M was not valid. Under California law, the essential elements for a contract are (1) "[p]arties capable of contracting;" (2) "[t]heir consent;" (3) "[a] lawful object;" and (4) "[s]ufficient cause or consideration." Cal. Civ.Code § 1550 (West 1999); *Marshall & Co. v. Weisel*, 242 Cal.App.2d 191, 51 Cal.Rptr. 183, 187 (1966).

■ Oliver provides three alternative theories challenging the subcontract. The first theory is that a valid subcontract never existed. However, Oliver makes no actual argument on appeal challenging the existence of the subcontract per se.[1] In fact, Oliver stipulated to the existence of the written subcontract document. That document meets all the elements required in § 1550.

■ The second and third theories are that the subcontract became invalid upon the expiration of the written contract on December 31, 1991, or, alternatively, that the contract became invalid when ES

---

1. Federal Rule of Appellate Procedure 28 requires the Appellant to do more than simply make assertions. She must provide an argument that contains "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R.App. P. 28(a)(9)(A).

reincorporated as Parsons ES on October 1, 1994–after the written contract had expired. Under California contract law, a contract may be implied from the conduct of the parties. Cal. Civ.Code § 1621 (West 1999); *British Motor Car Distrib., Ltd. v. New Motor Vehicle Bd.,* 194 Cal. App.3d 81, 239 Cal.Rptr. 280, 285–86 (1987). It is undisputed from the record that Parsons ES and I & M continued to perform under the terms of the agreement. Therefore, the district court correctly held that a valid subcontract existed because the parties' continued performance under the terms of the written contract was sufficient to prove the continued existence of the contract. Oliver's attempts to prove falsity by challenging the subcontract between Parsons ES and I & M are unavailing.

### 3.

■ Oliver's final argument alleging falsity involves the issue of whether Parsons ES's accounting practices complied with the federal Cost Accounting Standards. The district court held in its Order of July 31, 1997, that the "falsity" element under the Act was not met because Parsons demonstrated that it made a reasonable interpretation of an ambiguous accounting standard, citing *Hagood v. Sonoma County Water Agency,* 81 F.3d 1465 (9th Cir.1996). It concluded that the issue was "not what motive defendants had for employing [their] accounting system ... but rather whether that accounting system reasonably complied with applicable rules and regulations."

The district court erred. *Hagood* does not stand for the proposition that a "reasonable interpretation" of a regulation precludes falsity. *Hagood* involved the question of whether the defendant's submission of allocation costs under the Water Supply Act gave rise to a false claim under the

False Claims Act. *Id.* at 1476–77. In *Hagood,* the statute itself granted discretion in deciding the cost allocation that the plaintiff claimed was false. *See id.* at 1477 ("all authorized purposes served by the project shall share equitably in the benefits of multiple purpose construction, as determined by the Secretary of the Army or the Secretary of the Interior" (emphasis added)). Unlike *Hagood,* this case involves regulations that, while unquestionably technical and complex, are not discretionary. Their meaning is ultimately the subject of judicial interpretation, and it is Parsons' compliance with these regulations, as interpreted by this court, that determines whether its accounting practices resulted in the submission of a "false claim" under the Act. *See United States v. Mead,* 426 F.2d 118, 122 (9th Cir.1970), (concluding, after engaging in judicial construction, that the defendant's interpretation of the relevant regulations was erroneous); *see also United States ex. rel. Schumer v. Hughes Aircraft Co.,* 63 F.3d 1512, 1524 (9th Cir.1995), *rev'd on other grounds,* 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) ("[U]nallowable costs can trigger the False Claims Act").[2]

Thus, while the reasonableness of Parsons' interpretation of the applicable accounting standards may be relevant to whether it knowingly submitted a false claim, the question of "falsity" itself is determined by whether Parsons' representations were accurate in light of applicable law. Because the district court erroneously relied on this reasonableness analysis, we do not reach the issue of whether Parsons' accounting measures complied with the Cost Accounting Standards and instead remand for further proceedings on this issue.

---

**2.** The amicus brief submitted by the Government correctly points out the potential problem created by embracing a "reasonable interpretation" exception to the "falsity" of a claim. A defendant could submit a claim, knowing it is false or at least with reckless disregard as to falsity, thus meeting the intent element, but nevertheless avoid liability by successfully arguing that its claim reflected a "reasonable interpretation" of the requirements.

## B

### Knowing Submission of a False Claim

The third element of a cause of action under the Act requires that the defendant knew the claim was false or fraudulent. 31 U.S.C. § 3729(a)(1) (West 1999). Knowledge is established by proving that the defendant (1) had actual knowledge that it submitted a false or fraudulent claim for payment or approval, (2) acted in deliberate ignorance of the truth or falsity of its claim, or (3) acted in reckless disregard of the truth or falsity of its false claim. 31 U.S.C. § 3729(b) (West 1999); *Wang v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir.1992). "[I]nnocent mistakes" and "negligence" are not offenses under the Act. *Id.*

We conclude that there are issues of fact that survive the standard of summary judgment. Specifically, Parsons' failure to disclose the existence of I & M in its disclosure statement, coupled with the Oliver affidavit, are enough, viewed in the light most favorable to Oliver, to preclude summary judgment. Evidence in the record demonstrates that Parsons ES failed to list I & M among the companies with whom it engaged in inter-organizational transfers. The language of the relevant disclosure statement, section 2.8.0 states:

*Inter-organizational Transfers.*

This item is directed only to those materials, supplies, and services which are, or will be transferred to you from divisions, subsidiaries, or affiliates under common control with you.

([I]ndicate the basis used by you as transferee to charge the cost or materials, supplies, and services to Government contracts of similar cost objectives.)

In response, Parsons ES submitted a list of companies it stated "included" but was not "limited to" the companies with which it had inter-organizational transfers. Parsons ES did not list I & M among these companies, despite the fact that it was required to provide a "complete and accurate" disclosure under the regulations. *See* 48 C.F.R. § 9903.202–10 (1999).

Furthermore, Oliver's affidavit states that, while in her position as a government accounting specialist for Parsons ES, she immediately contacted the appropriate officers upon discovering the existence of I & M. They told her to "forget about it." The affidavit continues:

I replied that Parsons better hope the DCAA doesn't discover I & M. The reason why I said that was because I knew that the Defense Contract Audit Agency was upset what the DCAA Auditors discovered during a floorcheck in 1992 that Parsons ES was providing services (Accounting, Human Resources, etc.) to intercompanies.... Because of that discovery, DCAA asked Parsons ES to produce a list of all Parsons interorganizational companies for which Parsons ES performed services. Parsons ES provided this list.... However, I & M was excluded from this list even though I & M has been transferring labor and other fringe benefits intercompany to ES and Parsons ES since 1989.

Oliver's affidavit further states that she was informed that the I & M company was set up so that Parsons ES would not have to include its direct labor in the labor base for computation of the overhead rate billed to the federal government. This evidence is enough to create a genuine issue of material fact precluding summary judgment on the issue of scienter.

## IV

### ATTORNEYS' FEES

Because Oliver has yet to ultimately prevail in her qui tam action, we do not reach the issue of granting attorneys' fees, expenses and costs under 31 U.S.C. § 3730(d)(1) (West 1999).

REVERSED and REMANDED.